967 F.2d 942
 61 USLW 2015, 26 Collier Bankr.Cas.2d 1753,
Bankr. L. Rep. P 74,649
 Alfred P. CARLTON, Jr., Trustee in Bankruptcy as
successor-in-interest to the debtor, Firstcorp,
Inc., Plaintiff-Appellant,
Office of Thrift Supervision, Plaintiff-Appellee,
v.
FIRSTCORP, INCORPORATED, Defendant-Appellant.
 No. 91-1694.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 3, 1992.
Decided June 2, 1992.
As Amended June 9 and Aug. 12, 1992.
 
 Lacy H. Reaves, Poyner & Spruill, Raleigh, N.C. (Beth R. Fleishman, Poyner & Spruill, Raleigh, N.C., David G. Epstein, King & Spaulding, Atlanta, Ga., Alfred P. Carlton, Mark D. Martin, McNair Law Firm, Raleigh, N.C., on brief), for appellant.
 Harvey Alan Levin, Office of Thrift Supervision, Washington, D.C. (Ivana Terango, on brief), for appellee.
 Before SPROUSE, Circuit Judge, KISER, District Judge for the Western District of Virginia, sitting by designation, and BLATT, Senior District Judge for the District of South Carolina, sitting by designation.
 OPINION
 SPROUSE, Circuit Judge:
 
 
 1
 We are asked to decide whether regulatory action of the Office of Thrift Supervision (OTS) is precluded by bankruptcy's automatic stay provision, 11 U.S.C. § 362, after a thrift holding company has filed for Chapter 11 protection in bankruptcy. The district court, reversing a contrary ruling by the bankruptcy court, held that a provision of the Financial Institutions Supervisory Act of 1966, 12 U.S.C. § 1818(i)(1) et seq., superseded bankruptcy's automatic stay, and prevented it from applying to ongoing administrative proceedings and a temporary cease and desist order issued by the OTS against the thrift organization. We affirm.
 
 
 2
 * Firstcorp, Inc., headquartered in North Carolina, is a bankrupt savings and loan holding company engaged in a struggle with its federal regulator, the OTS.[1] Its problems arise from its dual ownership of the First Federal Savings and Loan Association of Durham (Durham), which is financially sound, and the First Federal Savings and Loan Association of Raleigh (Raleigh) which has been placed in a federal receivership as a result of its continued insolvency.
 
 
 3
 In 1985, Firstcorp acquired Raleigh. At that time, the Federal Home Loan Bank Board (FHLBB) was the statutorily designated regulator, and holding companies were required to obtain its approval before acquiring or disposing of savings and loan subsidiaries. The FHLBB approved the acquisition of Raleigh but conditioned the approval on a commitment by Firstcorp to maintain the net worth of the subsidiary at appropriate levels. To accomplish this, after obtaining the money from a public offering of Firstcorp securities, Firstcorp, in November and December 1985, infused $13.4 million into Raleigh.
 
 
 4
 In 1987, Firstcorp acquired Durham and operated both thrifts until late 1990. Although Durham so far has managed to weather the savings and loan crisis, Raleigh deteriorated rapidly in 1990. During the second half of 1990, its losses increased and it became insolvent.
 
 
 5
 Because of Raleigh's insolvency, the OTS (the successor to the Federal Home Loan Bank Board) entered the picture. It placed Raleigh into a federal receivership and charged Firstcorp with responsibility for $45 million required to rejuvenate the financially distressed institution.
 
 
 6
 The Financial Institutions Supervisory Act of 1966, 12 U.S.C. § 1818 et seq., empowers the OTS to supervise thrift holding companies.[2] Pursuant to that authority, the OTS ordered Firstcorp to take various steps which would effectively decrease the size of Raleigh's insolvency. It issued a temporary cease and desist order instructing Firstcorp to buttress Raleigh's balance sheet by transferring immediately its stock in Durham to a subsidiary of Raleigh. The temporary order also requires Firstcorp to cancel and return two capital notes to Raleigh, which Firstcorp received from Raleigh in exchange for the 1987 capital infusion of $13.4 million.[3] OTS served the temporary cease and desist order on Firstcorp on November 30, 1990, accompanied by a notice charging Firstcorp with committing an "unsafe and unsound practice" by failing to maintain the net worth of Raleigh in accordance with the requirements of the resolution authorizing the Raleigh acquisition. See 12 U.S.C. § 1818(b)(1) and (c). With the Notice of Charges, the OTS initiated an internal OTS administrative proceeding designed to result in a final cease and desist order.
 
 
 7
 Title 12 U.S.C. § 1818(c)(2) permits holding companies aggrieved by a temporary cease and desist order to seek an injunction in district court to suspend enforcement of the temporary order until a final order results. On December 4, 1990, Firstcorp responded to the OTS action by invoking that provision. It filed a complaint and an application for a temporary restraining order to stay enforcement of the temporary order in the district court for the Eastern District of North Carolina.
 
 
 8
 The following day, Firstcorp opened a second front--filing for protection under chapter 11 of the Bankruptcy Code in the Eastern District bankruptcy court. Two days later on December 7, 1990, Firstcorp sought further protection from the OTS, moving the bankruptcy court for an order confirming that both the internal OTS administrative proceedings and the temporary cease and desist order were suspended by the automatic stay provisions of 11 U.S.C. § 362.
 
 
 9
 At this juncture, Firstcorp on the one hand and the OTS, its regulatory adversary, on the other, moved and countermoved with some rapidity. On this same day, December 7, the OTS declared Raleigh insolvent, placed it into receivership, and appointed the Resolution Trust Corporation as its receiver. The OTS then immediately chartered a new savings and loan, First Federal Savings Association of Raleigh, which purchased the assets and assumed the deposit and other liabilities of Raleigh. As a result of the OTS action, Raleigh no longer operates as a thrift; it is in receivership.
 
 
 10
 After filing its action for an injunction in the district court and requesting confirmation of the automatic stay in the bankruptcy court, Firstcorp filed a third request for relief against the OTS on December 11, 1990, this time again in the bankruptcy court. Firstcorp's latest action took the form of a complaint against the OTS and an application for temporary and permanent injunctive relief under 11 U.S.C. § 105(a).[4]
 
 
 11
 The bankruptcy court expedited its consideration of Firstcorp's twin bankruptcy requests for relief. After conducting a hearing on December 14, 1990, it issued a written opinion and order on December 18, 1990, holding that the automatic stay applied to both the ongoing OTS proceeding and to the temporary order. In its opinion, the bankruptcy court indicated that a ruling on Firstcorp's request for injunctive relief was unnecessary because of the application of the automatic stay. In re Firstcorp, Inc., 122 B.R. 484 (Bkrtcy.E.D.N.C.1990). Nevertheless, Firstcorp obtained an order from the district court which stayed the district court action. See Firstcorp, Inc. v. Office of Thrift Supervision, No. 90-721-CIV-5-BO (E.D.N.C. February 5, 1991).
 
 
 12
 OTS appealed the bankruptcy court's ruling that the automatic stay provision applied to its proceedings. The district court reversed the decision of the bankruptcy court, holding that the automatic stay applied neither to the administrative proceeding nor to the temporary order. In re Firstcorp, Inc., 129 B.R. 450 (E.D.N.C.1991). Firstcorp, in turn, appeals to this court.
 
 II
 
 13
 While this appeal was pending, the United States Supreme Court decided Board of Governors of the Federal Reserve v. MCorp Financial, Inc., --- U.S. ----, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). It interpreted language in 12 U.S.C. § 1818(i)(1) (discussed below) to preclude the automatic stay provision of bankruptcy from applying to an administrative proceeding of the Federal Reserve Board involving a bankrupt bank holding company. Correctly recognizing that a major part of its appeal is now controlled by MCorp, Firstcorp now abandons its claim that the automatic stay applies to the internal administrative proceedings of the OTS. It continues to argue, however, that the automatic stay applies to the temporary cease and desist order issued by the OTS. It argues alternatively for a remand to the bankruptcy court so that the bankruptcy court may consider Firstcorp's request for the putative injunctive relief provided by section 105(a).
 
 
 14
 * Title 12 U.S.C. § 1818 establishes three mechanisms for judicial oversight of OTS orders. First, section 1818(c)(2) provides that, within ten days after service of a temporary cease and desist order, a holding company may seek an injunction in district court restraining enforcement of the order pending completion of the related administrative proceeding. Second, section 1818(h) authorizes the courts of appeals to review final cease and desist orders on the application of an aggrieved party. Finally, section 1818(i)(1) empowers the OTS to apply to the district court for enforcement of any outstanding order, whether temporary or final.
 
 
 15
 Section 1818(i)(1) provides further that "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order."
 
 
 16
 In MCorp, the Supreme Court interpreted that language to preclude the application of the automatic stay to administrative proceedings of the Federal Reserve Board. MCorp involved two ongoing administrative proceedings at the Federal Reserve Board. One charged MCorp with violating the Board's "source of strength" regulation, 12 C.F.R. § 225.4(a)(1). The other charged MCorp with violating section 23A of the Federal Reserve Act, 12 U.S.C. § 371c, which imposes various restrictions on bank holding companies.
 
 
 17
 In MCorp, however, there was no issue concerning application of the automatic stay to a temporary cease and desist order. Although three temporary cease and desist orders had been issued by the Board against MCorp in that case, they were not involved in the Supreme Court proceeding. See MCorp, supra at ---- n. 6, 112 S.Ct. at 462 n. 6, 116 L.Ed.2d at 364 n. 6 ("We address only MCorp's effort to enjoin the Board's administrative proceedings and express no opinion on the continuing vitality or validity of any of the temporary cease-and-desist orders.").
 
 
 18
 We think that the Supreme Court's reasoning in MCorp, that the automatic stay does not apply to internal administrative proceedings, applies equally to temporary cease and desist orders of regulatory agencies in these circumstances. Section 1818(i)(1)'s relevant language is "no court shall have jurisdiction to affect ... enforcement of any notice or order under this section, or to ... suspend ... any such notice or order."
 
 
 19
 Firstcorp contends that the temporary order can be distinguished from ongoing administrative proceedings because the order requires Firstcorp to immediately transfer assets of the bankruptcy estate, and that this difference justifies application of the automatic stay to the temporary order. We are unpersuaded. No language in the automatic stay provision, 11 U.S.C. § 362, or in 12 U.S.C. § 1818, provides a basis for such a distinction. Section 1818(h) authorizes courts of appeals to review final orders, and section 1818(i)(1) empowers the OTS to apply to district court for the enforcement of any outstanding temporary or permanent orders. These enforcement provisions present a unified regulatory scheme which under MCorp is free from the intrusion of bankruptcy's automatic stay. Similarly, section 1818(c)(2), which allows holding companies to obtain injunctive relief from a temporary cease and desist order, complements the statutory structure authorizing the regulatory agency to issue and enforce such orders and provides a mechanism for challenge by holding companies. In the absence of legislative history to the contrary, it seems clear to us that by devising a comprehensive scheme governing the oversight of financial institutions, from administrative control through judicial review of the administrative agency's actions, and by explicitly making the scheme exclusive, Congress intended to exclude other methods of interfering with the regulatory action. We, therefore, affirm the district court's ruling that the automatic stay does not apply to the temporary order.[5]
 
 B
 
 20
 In view of the above, the judgment of the district court is affirmed, but remanded for appropriate action on Firstcorp's pending application for an injunction. We leave to the district court the initial determination of whether to resolve Firstcorp's application for an injunction or to remand it to the Bankruptcy Court.
 
 
 21
 AFFIRMED, BUT REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The OTS was created by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (1989). It replaces the Federal Home Loan Bank Board and is charged with regulating federally-chartered thrifts and thrift holding companies
 
 
 [2]
 See also 12 U.S.C. § 1463, a provision of the Home Owners' Loan Act of 1933, codified at 12 U.S.C. § 1461, et seq., as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989
 
 
 [3]
 The temporary cease and desist order directs Firstcorp to: immediately upon receipt of this Order, extinguish and cancel the capital notes from First of Raleigh and the accrued interest receivable thereon and return the canceled instruments to First of Raleigh as partial satisfaction of its capital maintenance obligation.... Firstcorp shall immediately transfer all of its ownership interests in First of Durham to [one of the wholly-owned subsidiaries of] First of Raleigh ... in partial satisfaction of its capital maintenance obligation
 The temporary cease and desist order also directs Firstcorp not to engage, directly or indirectly, in transactions with Raleigh or Durham without prior OTS approval. It instructs Firstcorp not to transfer or pledge any of its assets without OTS consent, and to use its best efforts to meet the minimum capital requirements of Raleigh.
 
 
 [4]
 11 U.S.C. § 105(a) provides:
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 This grant of authority to bankruptcy courts includes the power to enjoin the continuation of ongoing judicial and administrative proceedings which are excepted from the automatic stay. See, e.g., Browning v. Navarro, 743 F.2d 1069, 1084 (5th Cir.1984).
 
 
 [5]
 Because we conclude that § 1818(i)(1) prevents application of the automatic stay, we need not reach, and express no opinion on, the OTS's alternative argument that the temporary order falls within the § 362(b)(4) and (5) exceptions to the automatic stay