**SUNSHINE DEVELOPMENT, INC., et al., Plaintiffs, Appellees,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, As Liquidating Agent for First Service Bank for Savings, Defendant, Appellant.**

No. 94–1509.

United States Court of Appeals, First Circuit.

Heard June 6, 1994.

Decided Aug. 22, 1994.

cise of its lawful statutory powers. Accordingly, we reverse.

## I.

### Background

The facts essential to an understanding of this appeal are not disputed. Between 1985 and 1988, First Service Bank for Savings made a total of seven separate loans to Sunshine Development, Inc. in connection with various projects, including Salisbury Pasture (Franklin, New Hampshire), Brightside Place (Derry, New Hampshire), and 154 Webster Street (Hudson, New Hampshire). The debt (much of which remains unpaid) is evidenced by three promissory notes. The notes are cross-collateralized and secured by mortgages encumbering all three pieces of property.

Gregory E. Gore, Counsel, with whom Ann S. DuRoss, Asst. Gen. Counsel, Robert D. McGillicuddy, Sr. Counsel, Michelle Kosse, Counsel, Washington, DC, Steven A. Solomon, and Backus, Meyer & Solomon, Manchester, NH, were on brief, for appellant.

Dennis G. Bezanson, Portsmouth, NH, for appellees.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LAGUEUX,* District Judge.

SELYA, Circuit Judge.

This appeal requires us to determine the scope of the immunity from injunctions granted to the Federal Deposit Insurance Corporation (FDIC) under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. 101–73, 103 Stat. 183 (Aug. 9, 1989), in the context of bankruptcy proceedings. After sketching how Congress intended FIRREA to operate, and clarifying the source and extent of bankruptcy courts' powers to manage the estates of debtors whose fates are intertwined with the affairs of failed financial institutions, we conclude that the court below lacked the authority to restrain the FDIC in the exer-

#### A

Neither lender nor borrower survived the collapse of the New England real estate market. A year after the last loan had been made, First Service was declared insolvent. On March 31, 1989, the FDIC was appointed as liquidating agent (and thereby became the owner and holder of the notes). On November 24, 1989, Sunshine petitioned for voluntary reorganization under Chapter 11 of the Bankruptcy Code. The FDIC seasonably filed a proof of claim in the bankruptcy court, asserting secured claims amounting to $4,948,203.87. In April of 1991, the FDIC petitioned the bankruptcy court for relief from the automatic stay, see 11 U.S.C. § 362(d)(1) & (2), so that it might initiate foreclosure proceedings against the properties. Among other things, the FDIC asserted that during the prior two years Sunshine had failed to pay required real estate taxes and insurance premiums. The bankruptcy court granted the FDIC's petition on July 1, 1991. No appeal ensued.

On July 31, 1992, the FDIC filed an amended proof of claim in the bankruptcy court. In March of 1993, the court converted Sunshine's bankruptcy into a Chapter 7 case

* Of the District of Rhode Island, sitting by designation.

and appointed a trustee.[1] On July 20, 1993, the FDIC amended its proof of claim once again. Throughout, the FDIC, for reasons not illuminated in the record, abjured any attempt to foreclose on the mortgages that it held.

## B

Prior to any insolvency, the bank and the developer parted company. Each sued the other. In one suit, the bank sought to collect principal and interest due under the notes; in the other, the borrower sought to recover damages from the bank on various lender liability theories. These suits, though begun in 1988, remained dormant for some time. In 1991, the district court consolidated them and eventually referred the ongoing litigation to the bankruptcy court.

The bankruptcy court repackaged the litigation and brought it to a head. Following a two-week trial that ended in May of 1992, a jury not only decided that Sunshine owed nothing to the FDIC as the bank's successor in interest, but also decided that Sunshine deserved $2,000,000 in damages. The bankruptcy court disagreed. It set aside the jury verdict and entered judgment in favor of the FDIC, against Sunshine, for $2,717,856.12.[2] Sunshine appealed to the district court on February 12, 1993. *See* 28 U.S.C. § 158(a). The appeal (which we shall term "the Merits Appeal") is still pending in that court.

## C

The pot came to a boil when the FDIC scheduled a foreclosure sale of all three properties for May 11, 1994. Alarmed at the prospect of foreclosure before the Merits Ap-

peal had been decided,[3] appellees petitioned the bankruptcy court for injunctive relief to pretermit the proposed foreclosure sale. For whatever reason, the bankruptcy court referred the petition to the district court. That court asked a magistrate-judge for a report and recommendation. *See* Fed. R.Civ.P. 72(b). Proceeding on the mistaken presumption that the automatic stay remained in force, the magistrate recommended issuance of a temporary restraining order aimed at halting the foreclosure.

The FDIC immediately objected to the recommendation. *See id.* It noted the magistrate's mistake and again asserted, citing FIRREA's anti-injunction provision, that the district court lacked the authority to grant the requested relief. The district court held a hearing one day before the scheduled foreclosure sale. In the course of the hearing, the parties acknowledged the magistrate's bevue and agreed that the automatic stay had been dissolved almost three years earlier. The district judge nonetheless enjoined the FDIC from foreclosing on the properties pending determination of the Merits Appeal.[4] The judge did not state the basis for his order.

## II.

### Standard of Review

Black letter law in this circuit instructs that district courts ordinarily are to determine the appropriateness of granting or denying a preliminary injunction on the basis of a four-part test that takes into account (1) the movant's likelihood of success on the merits, (2) the potential for irreparable injury, (3) a balancing of the relevant equities, and (4) the effect on the public interest. *See Narragansett Indian Tribe v. Guilbert*, 934

---

1. We henceforth refer to the debtor and its trustee in bankruptcy collectively as "Sunshine" or "appellees."

2. At trial, the FDIC claimed that the borrower owed roughly $3,951,000. Sunshine contested a fraction of the debt (on the basis that First Service failed properly to credit certain interim payments), admitted that the remainder was due, and sought to set off damages allegedly owed on the lender liability claims against the balance. The bankruptcy court's award represents the portion of the underlying debt that Sunshine did not controvert.

3. Sunshine apparently feared, *inter alia*, that if the properties were sold in foreclosure and it subsequently prevailed on its lender liability claims, it effectively would have lost the right of setoff, and, instead, would be merely a general unsecured creditor of the receivership. We take no view either of the legitimacy of these fears or of the parties' rights, should they materialize.

4. The Merits Appeal is pending before a different district judge. At oral argument, the parties informed us that it was heard and taken under advisement on May 24, 1994.

F.2d 4, 5 (1st Cir.1991); *Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 892 (1st Cir.1988). This formulation can only be used in circumstances in which the district court is empowered to issue an injunction. It is this antecedent question—the question of judicial power, sometimes called "jurisdiction"—that comprises the centerpiece of this appeal. Consequently, while we ordinarily review a district court's decision to grant or deny injunctive relief under a deferential abuse-of-discretion standard, *see, e.g., Narragansett Indian Tribe,* 934 F.2d at 5, this appeal—which presents a pure question of law—engenders *de novo* review. *See McCarthy v. Azure,* 22 F.3d 351, 354 (1st Cir.1994); *Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.,* 978 F.2d 750, 757 (1st Cir.1992); *see also Narragansett Indian Tribe,* 934 F.2d at 5 (explaining that an injunction may be overturned based on either "a mistake of law or an abuse of discretion").

The standard of review is particularly important because this case has a curious twist. The magistrate's recommendation was premised on a mistaken fact, the parties explicitly informed the district court of the error, and the court, though cognizant that the magistrate's reasoning was flawed, issued its own order without any accompanying explanation. Thus, we are very much in the dark as to the district court's thinking. In the end, however, it is not necessary that we remand. Since we review the legal issue *de novo,* access to the district court's rationale is not a prerequisite to appellate review.[5] Withal, the absence of any articulated reasoning below as to this controlling issue both increased the risk of error—an unexplained ruling being more likely to be a poorly considered one—and reduced this court's (and the parties') opportunities to benefit from the lower court's analysis.

### III.

#### *Discussion*

This case turns on the construction and interplay of several provisions of the statutes that define the powers of the FDIC and the bankruptcy courts, respectively. In each instance, our starting point is the statutory text. *See United States v. Gibbens,* 25 F.3d 28, 33 (1st Cir.1994).

### A

FIRREA constitutes a vital part of the federal government's response to the savings-and-loan crisis that rocked the nation in the latter half of the last decade. The method of the statute involves, among other things, "establish[ing] organizations and procedures to obtain and administer the necessary funding to resolve failed thrift cases and to dispose of the assets of [those] institutions...." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 103. To this end, FIRREA gives the FDIC unprecedented powers so that it may function efficaciously as a receiver or conservator of insolvent financial institutions. *See Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703, 705 (1st Cir.1992) (explaining that FIRREA is designed to "enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution"); *see also* 12 U.S.C. § 1821(d)(2)(B) (giving the FDIC wide-ranging powers to take over the assets of, and operate, an insured depository institution that fails); *see generally* H.R.Rep. No. 101–54(I), *supra,* 1989 U.S.C.C.A.N. at 126–29.

One major component of the statutory scheme is 12 U.S.C. § 1821(j). It states that, with exceptions not relevant here, "no court may take any action, except at the request of the Board of Directors [of the FDIC] by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." *Id.* By its terms, then, section 1821(j) is an anti-injunction measure, preventing courts from issuing

---

**5.** We wish to make it crystal clear that we prize the thinking of the district courts and encourage district judges to state the basis for their rulings whether or not they are legally required to do so. While our review of legal questions is *de novo,* we remain an appellate tribunal with the func-tion of reviewing what another court has already done: the thinking and analysis of that earlier tribunal—even when, on consideration, we disagree with it—is integral to the judicial process within which both courts are engaged.

orders that unduly inhibit the FDIC in the exercise of its statutory powers.[6]

Since the injunction issued below unabashedly restrains and affects the FDIC, acting in its capacity as a receiver, our inquiry reduces to whether the activity that the injunction kept the FDIC from pursuing falls within the FDIC's powers under FIRREA. This inquiry is actually composed of two subsidiary questions: (1) As a general matter, does the FDIC have the power to foreclose? (2) If so, does that power extend to the estate of a bankrupt debtor?

## B

■ The answer to the first query is patently in the affirmative. Congress has given the FDIC broad authority "to take over the assets ... and conduct all business of the institution," to "collect all obligations and money due the institution," and to "preserve and conserve the assets and property of such institution." 12 U.S.C. § 1821(d)(2)(B)(i), (ii), and (iv). As receiver, the FDIC may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution," 12 U.S.C. § 1821(d)(2)(E), "transfer any asset or liability of the institution," *id.* § 1821(d)(2)(G)(i)(II), and, in addition to the specific powers granted under these statutes, it may "exercise * * * such incidental powers as shall be necessary" to carry out its stated powers, *id.* § 1821(d)(2)(J)(i).

■ Taken in the ensemble, this broad array of powers easily encompasses the grant of a general power to foreclose on properties that the failed institution held as collateral. *See Lloyd v. FDIC,* 22 F.3d 335, 336 (1st Cir.1994) (interpreting these statutes as affording the FDIC the "power as receiver to foreclose on the property of a debtor"); *see also 281–300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir.1991) (holding that "the ability of the conservator to foreclose on the property of a debtor [is] a power that Congress gave to [agencies like the FDIC] under

FIRREA"), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992); *Abbott Bldg. Corp. v. United States,* 951 F.2d 191, 194 (9th Cir.1991) (similar). Therefore, in a run-of-the-mill case, a district court lacks the authority to enjoin the FDIC, acting lawfully as a receiver, from foreclosing on security that it holds. *See Lloyd,* 22 F.3d at 336–37 (holding that district courts lack jurisdiction to enjoin the FDIC, acting as receiver, from foreclosing on a debtor's property); *Telematics,* 967 F.2d at 706 (refusing to enjoin the FDIC from foreclosing on a certificate of deposit because section 1821(j) "must be accorded its ordinary meaning"); *see also Sweeney v. RTC,* 16 F.3d 1, 6 (1st Cir.1994) (per curiam) (explaining that section 1821(j) bars an injunction designed to block an imminent nonjudicial foreclosure scheduled by the RTC); *281–300 Joint Venture,* 938 F.2d at 39 (holding that under section 1821(j) "the courts lack the ability to enjoin nonjudicial foreclosures that are within the statutory powers" of the RTC *qua* receiver).

## C

The second query—whether the FDIC's power to foreclose extends to the context of bankruptcy proceedings—requires us to examine appellees' hydra-headed assertion that the debtor's bankruptcy removes the FDIC's proposed foreclosure here from the mine-run, and vests the federal courts with injunctive powers that would be lacking in respect to other FDIC foreclosure initiatives. Answering this second query is more complicated, for the statutes defining the authority of the FDIC form only part of the relevant legal universe; the statutes governing bankruptcy matters also must be consulted. We devote the next two sections of this opinion to the task of answering this second query.

It is not disputed that the three properties on which the FDIC seeks to foreclose constituted property of the debtor as of the date of bankruptcy and are thus property of the estate. *See* 11 U.S.C. § 541(a)(1) (explaining

---

**6.** Subject to enumerated exceptions, *see* 12 U.S.C. § 1441a(b)(5), the Resolution Trust Corporation (RTC), when operating as a receiver, enjoys the same powers, and is subject to the same FIRREA protections, as the FDIC. *See* 12

U.S.C. § 1441a(b)(4). Of particular interest here, section 1821(j) applies equally to both agencies. Consequently, we will refer freely to cases involving the RTC to illuminate section 1821(j)'s reach in respect to the FDIC.

that the bankruptcy "estate is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case"). As Sunshine correctly points out, the district court obtained jurisdiction over those properties by virtue of 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 1334(d), "[t]he district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *Id.; see also* 28 U.S.C. § 1334(a) (giving district court "original and exclusive jurisdiction of all cases under title 11").

Sunshine argues that this statutory mosaic also infuses the district court and/or the bankruptcy court with power to enjoin the FDIC.[7] This argument builds on the theory that, as a general proposition, a bankruptcy court may issue injunctions to protect its exclusive jurisdiction over estate property. *See* 11 U.S.C. § 105(a) (empowering bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); *see also In re Olympia Holding Corp.*, 141 B.R. 443, 446 (Bankr.M.D.Fla.1992) (relying on the jurisdictional grant contained in 28 U.S.C. § 1334(d) and the grant of protective powers contained in 11 U.S.C. § 105 to issue an injunction to safeguard estate property). And this proposition, Sunshine says, must mean that the bankruptcy court possesses the power to enjoin the FDIC when it is necessary to do so in order to preserve the assets of the bankruptcy estate.

We do not think that the appellees' argument proves their point. Rather, it serves merely to highlight the tension that exists between FIRREA's anti-injunction provision, on one hand, and the bankruptcy laws, on the other hand. But this tension does not mean

that the statutes are in irreconcilable conflict. As we explain below, they are not.

The preferred approach to statutory construction dictates that a reviewing court first determine if the perceived conflict between two laws is real. *See Connecticut Nat'l Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (cautioning that courts confronted by arguably conflicting statutes must give effect to both, where possible). Here, the perceived conflict is more apparent than real, for the statutes can be reconciled. The key to harmonizing them lies with 11 U.S.C. § 362.

Section 362 of the Bankruptcy Code is an "automatic stay" provision. It provides in substance that filing a bankruptcy petition activates an automatic stay. That applies, *inter alia*, to the commencement or continuation of most judicial actions or proceedings against the debtor to obtain possession of property of the estate. 11 U.S.C. § 362(a)(1), (3). Foreclosure constitutes an action or proceeding against the debtor within the purview of this law. Hence, attempts to foreclose come within the statutory sweep and are banned unless and until the automatic stay is lifted, *see id.* § 362(d). Thus, no person or entity has a choate power to foreclose on property belonging to a bankrupt's estate so long as the automatic stay is in place.

We see no basis for exempting the FDIC from the strictures of this regime when it is acting as a receiver or conservator.[8] Because the automatic stay is exactly what the name implies—"automatic"—it operates without the necessity for judicial intervention. Consequently, the stay's curtailment of the FDIC's power does not run afoul of FIRREA's anti-injunction provision, which only prohibits "*court* ... action ... to re-

---

**7.** Despite the fact that the district court issued the injunction in this instance, the litigants argue the case primarily in terms of the bankruptcy court's power to enjoin the FDIC. We agree that, for purposes of this appeal, the district court and the bankruptcy court can be treated interchangeably.

**8.** To be sure, 11 U.S.C. § 362(b)(4) provides that the automatic stay does not reach proceedings

undertaken to enforce a "governmental unit's police or regulatory power." But when the FDIC operates as a receiver or conservator, it does not exercise "regulatory power" within the meaning of this statute. *See generally Howell v. FDIC*, 986 F.2d 569, 574 (1st Cir.1993) (distinguishing between FDIC acting in its corporate capacity as a regulator and in its capacity as a receiver).

strain or affect the exercise of powers or function of the [FDIC] as a ... receiver." 12 U.S.C. § 1821(j) (emphasis supplied). On that basis, we are confident that the automatic stay does not violate FIRREA's anti-injunction provision because it arises directly from the operation of a legislative enactment, not by court order. *Accord In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir.1992); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 407 (3d Cir.1992).

The automatic stay works in tandem with the statutes on which Sunshine relies. The broad jurisdictional grant of 28 U.S.C. § 1334 is designed to centralize proceedings in the bankruptcy court, and 11 U.S.C. § 105 is designed to permit the court to protect that jurisdictional grant. The automatic stay furthers this policy by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets. "The stay insures that the debtor's affairs will be centralized, *initially*, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Colonial Realty*, 980 F.2d at 133 (citation omitted) (emphasis supplied).

Nonetheless, the automatic stay does not always operate in perpetuity. While the stay ensures that most matters related to the debtor's estate will come under the wing of a single bankruptcy court *in the first instance*,[9] further provisions of the same statute permit the bankruptcy court to relax the automatic stay under enumerated conditions. *See* 11 U.S.C. § 362(d)–(g). Once relief from the stay is granted, an "action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case" may go forward. *Id.* § 362(a). In other words, by granting relief from the automatic stay the

bankruptcy court effectively yields the exclusive control over the debtor's estate initially accorded to it by section 1334(d).

With all pieces in place, the assembled doctrinal puzzle looks like this: the jurisdictional grant and the automatic stay work together to centralize nearly all claims relating to the bankrupt estate in the bankruptcy court. While the legislatively mandated stay is in place, the FDIC, like any other creditor, is fully subject to it. If at this point the FDIC were to ignore the stay and initiate a foreclosure proceeding, the bankruptcy court would be acting within its authority to issue an injunction. After all, FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j), only prohibits court actions restraining FDIC's exercise of its *lawful* powers or functions. *See 281–300 Joint Venture*, 938 F.2d at 39.

Once the bankruptcy court grants the FDIC relief from the automatic stay, however, the court surrenders the preferred position that Congress carved out for it. At that juncture, FIRREA's anti-injunction provision comes into play. Thereafter, without the automatic stay in place, the bankruptcy court, like any other court, is prevented from taking "any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver." 12 U.S.C. § 1821(j). So viewed, the statutes under consideration do not conflict.

We thus answer the second of our two questions affirmatively and hold that FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j), applies in the bankruptcy milieu. That ends this phase of our inquiry. In this case, relief from the automatic stay had been obtained long before the FDIC instituted foreclosure proceedings, and Sunshine had not appealed. Consequently, the bankruptcy court had surrendered its exclusive control over the properties and, in the face of FIRREA's anti-injunction provision, could not then reverse direction and restrain the FDIC from going forward.[10]

---

9. In the interests of accuracy, we note that certain property is excepted from the operation of the automatic stay. *See* 11 U.S.C. § 362(b). This exception has no relevance for present purposes.

10. We are not aware of any instance involving either the FDIC or the RTC in which a court reinstated the automatic stay after having granted a party relief from it. We leave for another day the dichotomous question whether reinstatement of a section 362(a) stay vis-a-vis the FDIC

## D

In a related vein, the appellees also suggest that section 1334(b) gives the bankruptcy court power to grant an injunction against the FDIC, FIRREA notwithstanding.[11] Appellees' reliance on this provision is misplaced.

█ We need not wax longiloquent. The Supreme Court rebuffed a strikingly similar interpretation of section 1334(b) in *Board of Governors v. MCorp Financial, Inc.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). There, the debtor contended that section 1334(b) gave a bankruptcy court concurrent jurisdiction that empowered it to enjoin ongoing administrative proceedings of the Federal Reserve Board, despite a specific statutory provision precluding injunctions in such circumstances. The Court rejected the debtor's argument, holding that section 1334(b) "concerns the allocation of jurisdiction between bankruptcy courts and other 'courts'" and that "an administrative agency such as the Board is not a 'court'." *MCorp*, 502 U.S. at ──, 112 S.Ct. at 465. Section 1334(b) is similarly inapplicable to a nonjudicial foreclosure proceeding undertaken by the FDIC (which, like the Federal Reserve Board, is not a "court").[12]

## E

█ The appellees have one more shot in their sling. They strive to persuade us that, regardless of FIRREA's anti-injunction provision, authority to enjoin the FDIC can be found in the bankruptcy court's general equitable jurisdiction, to which the FDIC subjected itself by filing proofs of claim and litigating in the bankruptcy court. For this thesis, appellees rely almost exclusively on the bankruptcy court's reasoning in *In re Tamposi Family Inv. Properties*, 159 B.R. 631 (Bankr.D.N.H.1993). But the reasoning of the *Tamposi* court cannot withstand scrutiny.[13]

There, the debtors brought adversary complaints against the FDIC under 11 U.S.C. § 547(b), seeking to avoid transfers that had been made to the failed bank less than ninety days before the debtors declared bankruptcy. *See Tamposi*, 159 B.R. at 632–33. The FDIC contended that the bankruptcy court lacked subject matter jurisdiction under 12 U.S.C. § 1821(d)(13)(D), a FIRREA provision stating that "no court shall have jurisdiction over ... [a]ny claim or action for payment from ... the assets of any depository institution for which the [FDIC] has been appointed receiver...." The *Tamposi* court rejected the FDIC's contention because "by filing a proof of claim in a bankruptcy proceeding, the creditor/claimant submits itself to the process of allowance and disallowance of claims which is at the heart of a bankruptcy court's subject matter jurisdiction." *Tamposi*, 159 B.R. at 634.

The *Tamposi* court's reasoning leaves much to be desired. In the first place, the bankruptcy court, 159 B.R. at 636, misread our opinion in *Marquis v. FDIC*, 965 F.2d 1148 (1st Cir.1992). In *Marquis*, we held that federal courts retain a modicum of subject matter jurisdiction over actions pending against failed financial institutions even after the FDIC has been appointed as receiver, notwithstanding the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) (a FIRREA accou-

---

would be possible, and if so, whether such reinstatement would constitute "court action" violative of 12 U.S.C. § 1821(j). We likewise express no opinion as to whether judicial implementation of a stay pursuant to Bankruptcy Rule 8005 might run afoul of section 1821(j).

**11.** The statute provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

**12.** This case presents a relatively easy question involving an ill-starred effort to apply section 1334(b) to nonjudicial proceedings instituted by an administrative agency. We intimate no opinion regarding that section's applicability *vel non* to the FDIC in other settings.

**13.** It is important to note that, although *Tamposi*'s reasoning is flawed, the result in the case may be defensible. *See, e.g., In re Parker North Amer. Corp.*, 24 F.3d 1145, 1155–56 (9th Cir. 1994) (holding that section 1821(d)(13)(D) does not bar a bankruptcy court from hearing a preference action against the RTC).

terment providing that "no court shall have jurisdiction over ... any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver"). *See id.* at 1155. We arrived at this holding as a matter of statutory interpretation, stressing other language in FIRREA that addresses claimants' rights "to continue any action which was filed before appointment of a receiver," 12 U.S.C. § 1821(d)(5)(F)(ii). Moreover, we specifically limited the reach of the *Marquis* holding to actions pending in a federal court prior to the FDIC's appointment as receiver or conservator. *See id.* at 1154.

The *Tamposi* court ignored this limitation. Instead, it erroneously asserted that whether proceedings were pending at the time of the FDIC's appointment "is irrelevant under the logic of *Marquis*." *Tamposi,* 159 B.R. at 636. This assertion is incorrect: the holding in *Marquis* cannot be transplanted root and branch to a wider class of cases. Specifically, the holding is inapposite in the *Tamposi* context—and it is similarly inapposite here.

The second problem with the reasoning of *Tamposi* is that the opinion places too great a premium on a trio of Supreme Court cases not involving the FDIC. Each of these cases stands for the somewhat mundane proposition that "by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable powers." *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (citation and internal quotation marks omitted); *accord Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 2799 n. 14, 106 L.Ed.2d 26 (1989) (noting that "by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims"); *Katchen v. Landy,* 382 U.S. 323, 329–30, 86 S.Ct. 467, 472–73, 15 L.Ed.2d 391 (1966) (similar). We do not doubt that this proposition pertains to the FDIC—but staking the farm on it for present purposes begs the question of what equitable powers the bankruptcy court possesses vis-a-vis particular litigants.

Once the question is properly framed, the FDIC's involvement makes a dispositive difference. The bankruptcy court is a creature of statute, and Sunshine has not suggested that it is beyond Congress's lawful powers to limit the remedies available to that court or to remove selected matters from its jurisdiction. Here, Congress exercised that very power, limiting the authority of all courts— the bankruptcy court included—to enjoin the FDIC. The general proposition that filing a proof of claim subjects a party to the bankruptcy court's equitable jurisdiction cannot be read in isolation, but, rather, must be read in conjunction with the specific statutory language, contained in section 1821(j), that Congress subsequently saw fit to write. *Cf. Vimar Seguros Y Reaseguros, S.A. v. M/V SKY REEFER,* 29 F.3d 727, 732 (1st Cir.1994) (explaining that a specific, later-enacted statute "ordinarily controls the general") (collecting cases); *Watson v. Fraternal Order of Eagles,* 915 F.2d 235, 240 (6th Cir.1990) (same).

Finally, and relatedly, to accept the *Tamposi* court's reasoning would be to stand FIRREA on its ear. After all, once a party declares bankruptcy, a creditor's principal recourse to money owed is by filing proofs of claim in the bankruptcy court. Under the *Tamposi* regime, when the FDIC as receiver or conservator is also a creditor of a bankrupt, the FDIC must either elect to forgo its claim or to waive its statutory protections. In the most auspicious of circumstances, we would be reluctant to read section 1821(j) as constructing so perverse a paradigm.

Here, the circumstances are anything but auspicious, for the statute is prefaced by the phrase "Except as otherwise provided in this section...." This language serves to identify those occasions on which the anti-injunction provision lacks force. *See, e.g.,* §§ 1821(c)(7), 1821(c)(8)(C). When, as now, a law itself contains an enumeration of applicable exemptions, the maxim "expressio unius est exclusio alaterius" ordinarily applies. Under that maxim, a legislature's affirmative description of certain powers or exemptions implies denial of nondescribed powers or exemptions. *See Continental Cas. Co. v. United States,* 314 U.S. 527, 533, 62 S.Ct. 393, 396, 86 L.Ed. 426 (1942); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616

F.2d 603, 605 (1st Cir.1980);  *see generally* 2A Norman J. Singer, *Sutherland Stat. Const.* § 47.23, at 216–17 (5th ed. 1992).  So it is here.

### *IV.*

### *Conclusion*

We need go no further.  There is no conflict between the statutory provisions defining the bankruptcy courts' jurisdiction and the FDIC's powers while the automatic stay is in place.  When and if a bankruptcy court grants relief from the stay for a particular purpose, however, the FDIC's powers, which in this regard are spelled out by FIRREA's recent, clear, and specific language, come to the fore and trump the residual powers of the courts.  Had the court below correctly understood the interface between the relevant statutory schemes, it would have realized that, because the automatic stay had been dissolved, the appellees were requesting relief of a kind that, 18 U.S.C. § 1821(j) considered, exceeded the district court's authority.  Consequently, the injunction issued by the lower court may not stand.

*Reversed.*