Richard A. ASQUINO

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION.**

**Civil No. B–95–2330.**
**Bankruptcy No. 95–5–3990.**
**Adversary No. 95–5350.**

United States District Court,
D. Maryland.

May 16, 1996.

Kenneth Oestreicher, Baltimore, Maryland, for Plaintiff.

Charles L. Cope, II and Richard Braun Foley, Washington, D.C., and George L. Russell, III, Baltimore, Maryland, for Defendant.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court is a Motion to Dismiss filed on behalf of defendant, Federal Deposit Insurance Corporation ("FDIC"). On July 20, 1995, plaintiff Richard A. Asquino instituted an adversary proceeding against FDIC, seeking injunctive relief, declaratory relief and damages for FDIC's alleged violation of the automatic stay provision of 11 U.S.C. § 362. Asquino also filed an emergency motion for a temporary restraining order and preliminary injunction.

On October 27, 1995, FDIC filed the instant motion seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. FDIC maintains that subject matter jurisdiction is lacking because 12 U.S.C. § 1822(f)(4)(D)(ii) precludes the Court from reviewing the actions that FDIC has proposed to take. FDIC further asserts that any review that is available would arise not in the courts, but rather in accordance with the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified, as amended, in various sections of Title 5, U.S.C.) ("CSRA"), which provides for review by the Merit Systems Protection Board ("MSPB").

. Additionally, FDIC maintains that Asquino has failed to state a claim upon which relief can be granted, because there has not been a violation of the automatic stay or anti-discrimination provisions of the bankruptcy code. FDIC asserts that its actions involve

enforcement of the agency's police and regulatory power and are, therefore, exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). Moreover, FDIC alleges that its actions do not violate the anti-discrimination provision because they were not taken "solely" on account of Asquino having filed for bankruptcy relief.

Asquino proffers the following grounds for opposing FDIC's jurisdictional arguments: (1) that the automatic stay is a statutory injunction that operates without the necessity for judicial intervention, and thus that the stay's curtailment of FDIC's actions does not violate the prohibition on judicial review under Section 1822(f)(4); (2) that because Asquino is not seeking judicial review of the merits of FDIC's administrative action, the Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b); and (3) that the exemption from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) does not apply to the termination of employment involved here. Asquino also maintains that because Section 1822 is entitled "Corporation as Receiver," its prohibition on review does not apply where, as here, FDIC is acting in its corporate capacity, rather than in its capacity as receiver. With respect to FDIC's argument that any review would arise in accordance with the CSRA, Asquino asserts that the administrative process mandated under CSRA cannot be commenced once the protection of the bankruptcy court is sought. Finally, Asquino contends that FDIC's attempt to terminate his employment contract violates the automatic stay and anti-discrimination provisions of the bankruptcy code because it is based entirely on the failure of Asquino to satisfy a pre-petition judgment.

I

The facts relevant to this motion are not in dispute. Richard A. Asquino is employed by FDIC as a Senior Contract Specialist. In his personal capacity, he guaranteed a loan by Plymouth Five Cent Savings Bank ("Plymouth"), a failed financial institution, to Robrick Associates, Inc. ("Robrick"). When Robrick defaulted on its loan, FDIC, as receiver of Plymouth, brought suit against Asquino. On March 3, 1995, FDIC procured a judgment against Asquino in the amount of $92,439.09.

On June 2, 1995, Asquino filed for relief under Chapter 13 of the Bankruptcy Code. After receiving notice of Asquino's bankruptcy filing, FDIC informed Asquino in a letter dated June 29, 1995, that it was proposing to terminate his employment contract. The letter related that the reason for the proposed termination was that Asquino caused a substantial loss to federal deposit insurance funds, thereby failing to meet the minimum standards for continued employment required by 12 U.S.C. § 1822(f)(4)(E).

Asquino demanded that FDIC rescind the termination action, alleging that it violated the automatic stay provision of 11 U.S.C. § 362 and the anti-discrimination provision of 11 U.S.C. § 525(a). When FDIC refused, Asquino, on July 20, 1995, filed a Complaint for Injunctive Relief, Declaratory Relief and Damages for Violation of the Automatic Stay, an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and a Request for Immediate Hearing to Consider Motion for Temporary Restraining Order and Preliminary Injunction.

On July 26, 1995, the bankruptcy court issued a Temporary Restraining Order ("TRO") which enjoined FDIC from continuing its efforts to terminate the employment of Asquino. In an Order dated July 27, 1995, the bankruptcy court extended the TRO until August 14, 1995, and scheduled a hearing for the same date on the Motion for Preliminary Injunction. The bankruptcy court subsequently stayed the hearing scheduled for August 14th in an Order dated August 11, 1995. On October 20, 1995, upon a motion by FDIC, this Court transferred the adversary proceeding to its own docket, pursuant to 28 U.S.C. § 157(d).

This Court held a hearing on the instant motion on January 24, 1996. At the conclusion of the hearing, the Court requested that each party submit a supplemental brief addressing certain issues that Asquino raised for the first time during oral argument.

## II

■ FDIC maintains that its efforts to terminate Asquino's employment are compelled by 12 U.S.C. § 1822(f)(4), which requires FDIC employees to meet "minimum standards of competence, experience, integrity, and fitness." Specifically, this section compels the FDIC "to prohibit any person who has ... caused a substantial loss to Federal deposit insurance funds ... from performing any service on behalf of the [FDIC]." 12 U.S.C. § 1822(f)(4)(E)(iv). Further, FDIC Circular 2120.5, dated November 4, 1994, defines "substantial loss to Federal deposit insurance funds" to include "an obligation to pay an outstanding, unsatisfied, final judgment in excess of $50,000 in favor of any Federal deposit insurance fund, the FDIC, RTC, FSLIC, or their successors."

Section 1822(f)(4)(D)(ii) of the statute declares that any determination made by the FDIC pursuant to paragraph (f)(4) "shall be in the [FDIC's] sole discretion and shall not be subject to review." 12 U.S.C. § 1822(f)(4)(D)(ii). According to FDIC, the explicit language of this section divests the Court of subject matter jurisdiction of this case. In making this contention, FDIC relies heavily on the decision of the Supreme Court in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), and on two Fourth Circuit cases that follow *MCorp.* In *MCorp,* MCorp Financial, Inc., a bank holding company seeking relief in the bankruptcy courts, moved to enjoin the Federal Reserve Board from prosecuting two pending administrative proceedings against it. The Board maintained that 12 U.S.C. § 1818(i)(1) deprived the court of subject matter jurisdiction to enjoin the administrative proceedings. That provision provides:

> [E]xcept as otherwise provided in this section ... no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1) (Supp.1996).

Notwithstanding this section's explicit, preclusive language, MCorp argued that district court jurisdiction was authorized either by the automatic stay provision of the bankruptcy code, or by 28 U.S.C. § 1334(b), which grants district courts authority to exercise concurrent jurisdiction over certain bankruptcy-related civil proceedings. The Court rejected MCorp's position, holding that the language of 12 U.S.C. 1818(i)(1) precludes application of the automatic stay to ongoing, administrative proceedings. *Id.* at 42, 112 S.Ct. at 465. In so holding, the Court put substantial emphasis on the specific preclusive language in section 1818(i)(1), and on the clarity of that language. *Id.* at 42–44, 112 S.Ct. at 465–66. The Court determined that section 1818(i)(1) "is not qualified or superseded by the general provisions governing bankruptcy proceedings on which MCorp relies." *Id.* at 42, 112 S.Ct. at 465. Further, the Court noted that this statute "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction." *Id.* at 44, 112 S.Ct. at 466. The *MCorp* court also found that the Board's actions fell "squarely" within 11 U.S.C. § 362(b)(4), which provides for an exemption from the automatic stay for actions to enforce a governmental unit's police or regulatory power. *Id.* at 39–40, 112 S.Ct. at 463–64.

In *Carlton v. Firstcorp, Inc.,* 967 F.2d 942 (4th Cir.1992), the Fourth Circuit also faced a conflict between 12 U.S.C. § 1818(i)(1) and the automatic stay provision. There, the court extended the reasoning in *MCorp* to apply to the enforcement of temporary cease and desist orders of regulatory agencies. *Id.* at 945–46. Upon Firstcorp's attempt to distinguish *MCorp* by differentiating between cease and desist orders and ongoing, administrative proceedings, the court looked to the Bankruptcy Code, rather than to the statute containing the preclusive language, for such a distinction.[1] *Id.* at 946. Finding none, the

---

1. This finding provides a persuasive refutation of Asquino's additional contention that the Bankruptcy Code applies in this case because FDIC has failed to pinpoint a specific provision in its Act that would exempt FDIC from the automatic stay.

Court concluded that "[i]n the absence of legislative history to the contrary, it seems clear to us that by devising a comprehensive scheme governing the oversight of financial institutions, ... and by explicitly making the scheme exclusive, Congress intended to exclude other methods of interfering with the regulatory action." *Id.*

The Fourth Circuit followed *MCorp* and *Carlton* in *Landmark Land Co. of Carolina, Inc. v. Resolution Trust Corp.*, 973 F.2d 283 (4th Cir.1992). In *Landmark*, the court held that 12 U.S.C. § 1821(j)[2] precluded the district court from having subject matter jurisdiction to enjoin the Resolution Trust Corporation ("RTC"), while acting as conservator of a failed thrift, from taking control of the thrift's subsidiaries that are under the protection of the bankruptcy court. The court cited with approval cases in which the Supreme Court or Fourth Circuit determined that specific anti-injunctive language found in non-bankruptcy titles of the Code supersedes the general statutory language of the Bankruptcy Code. *Id.* at 289 (citing *MCorp; In re Heritage Village Church and Missionary Fellowship, Inc.*, 851 F.2d 104, 105 (4th Cir. 1988) (finding that the Anti–Injunction Act precludes injunction of IRS revocation of debtor's tax-exempt status because there is no express provision in the Bankruptcy Code indicating congressional intent that the Code supersede the anti-injunction statute)).

 The Court agrees with FDIC that *MCorp* and its Fourth Circuit progeny are dispositive of the instant case. In this case, as in those cases, the Court is asked to resolve a conflict between the Bankruptcy Code, which would vest the Court with subject matter jurisdiction, and a non-bankruptcy statute that would divest the Court of jurisdiction. It is a rule of statutory construction that, in reconciling the inconsistent requirements of two separate statutes, the more general provision must yield to the more specific. *See Cook County National Bank v. United States*, 107 U.S. 445, 451, 2 S.Ct. 561, 566–67, 27 L.Ed. 537 (1882). Ap-

plying this rule, the *MCorp, Carlton*, and *Landmark* courts found that the preclusive, non-bankruptcy provisions at issue supersede the general provisions governing bankruptcy. These cases are persuasive here, particularly in light of the close resemblance between Section 1822(f)(4)(D)(ii) and the non-bankruptcy provisions that were held to be controlling in *MCorp, Carlton*, and *Landmark*. Accordingly, the Court holds that the preclusive language of Section 1822(f)(4)(D)(ii) supersedes the Bankruptcy Code's automatic stay and anti-discrimination provisions, thereby divesting this Court of jurisdiction.

Asquino would have the Court follow a different line of cases that includes *In re Colonial Realty, Co.*, 980 F.2d 125 (2d Cir. 1992), and *Sunshine Development, Inc. v. FDIC*, 33 F.3d 106 (1st Cir.1994). The courts in these cases determined that actions of the FDIC, made pursuant to the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), were subject to the automatic stay despite the existence of an anti-injunction provision in FIRREA. The courts reasoned that the automatic stay does not conflict with FIRREA's anti-injunction provision. For example, in *Sunshine Development*, the First Circuit found that "[b]ecause the automatic stay is exactly what the name implies—'automatic'—it operates without the necessity for judicial intervention. Consequently, the stay's curtailment of the FDIC's power does not run afoul of FIRREA's anti-injunction provision which only prohibits '*court* action....'" 33 F.3d at 113 (quoting 12 U.S.C. § 1821(j)) (emphasis provided by *Sunshine Development* court).

The *Colonial Realty* court narrowly interpreted *MCorp*, maintaining that the jurisdictional holding in *MCorp* was limited to cases where a section 362(b)(4) exemption for police and regulatory acts is claimed to be applicable. 980 F.2d at 135. This narrow interpretation of *MCorp* has not, however, been adopted by the Fourth Circuit. The *Carlton* court explicitly declined to determine whether the cease and desist order at issue

---

**2.** This provision provides: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exer-

cise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C.A. § 1821(j) (West 1989).

there came within the section 362(b)(4) exemption, yet still premised its ruling on the preclusive effect of the anti-injunction provision. 967 F.2d at 946 n. 5. Because the Fourth Circuit's interpretation of *MCorp* is controlling in this jurisdiction, the Court must adhere to the more expansive interpretation of *MCorp* as set forth in *Carlton* and *Landmark.*

■ In any event, even if the narrow interpretation of *MCorp* propounded in *Colonial Realty* were correct, this Court would still find that *MCorp* controls the instant case, because of two important factual similarities between the two cases. First, the police/regulatory exemption set forth at 11 U.S.C. § 362(b)(4) that the *Colonial Realty* court concluded was central to the holding in *MCorp* is also implicated in this case. Asquino asserts that Section 1822(f)(4) has the strictly pecuniary purpose of requiring FDIC employees either to cure defaults on loans from insured depository institutions or to satisfy judgments resulting from such defaults. Asquino maintains, therefore, that the section does not implicate the regulatory exemption. The Court disagrees. Section 1822(f)(4) is a conflict of interest provision that requires FDIC employees and contractors to meet "minimum standards of competence, experience, integrity, and fitness." Because this provision governs standards of conduct, it has obvious public policy ramifications, irrespective of any pecuniary interest. Accordingly, the enforcement of this provision constitutes an exercise of FDIC's police or regulatory power.

Second, both cases concern ongoing, administrative proceedings. The ongoing, administrative character of the instant proceeding is evidenced by the June 29, 1995 letter from FDIC to Asquino, which states that it serves as "notice to [Asquino] that [FDIC] *proposes* to take adverse action against [him]," (emphasis added), and by the several procedural safeguards enumerated in that letter, including (1) "the right to review the material relied on to support this proposed action"; (2) "the right to reply to this notice either orally or in writing or both orally and in writing"; and (3) the right to "be assisted, accompanied and/or advised by an attorney or other representative of your own choosing." Because the police/regulatory exemption applies to this case, and because FDIC's efforts to terminate Asquino amount to an ongoing, administrative proceeding, the actions taken by FDIC in attempting to terminate Asquino fall directly within the purview of *MCorp.*

■ Asquino further contends that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), which confers concurrent jurisdiction upon the district courts over certain bankruptcy-related civil proceedings. In *MCorp*, the Supreme Court rejected a similar argument, holding that section 1334(b) "concerns the allocation of jurisdiction between bankruptcy courts and other '*courts*' " and that "an administrative agency such as the [Federal Reserve] Board is not a '*court*.' " 502 U.S. at 41–42, 112 S.Ct. at 464–65 (emphasis in original). Because the FDIC is also not a "court," *see Sunshine Development*, 33 F.3d at 115 (finding section 1334(b) inapplicable to a nonjudicial foreclosure proceeding undertaken by the FDIC), section 1334(b) does not apply to the termination proceedings at issue in this case.

■ The Court is also unpersuaded by Asquino's argument that Section 1822's heading—"Corporation as Receiver"—precludes application of the section to actions, such as this attempt to terminate Asquino, taken by the FDIC in its corporate capacity. It is a rule of statutory construction that "the heading of a section cannot limit the plain meaning of the text." *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947). Thus, absent an ambiguity in the text, section headings are of little interpretive value. *Id.* The text of Section 1822(f) is not ambiguous. The section refers to the "Corporation," without regard to any specific capacity. The term "Corporation," defined in 12 U.S.C. § 1811 as the "Federal Deposit Insurance Corporation," is unambiguous and certainly broad enough to cover actions executed by FDIC in its corporate capacity. Further, subsection (f) contains no language limiting its application to conflicts

of interest arising when the FDIC is acting as a receiver.

### III

For all the foregoing reasons, the Court finds that it lacks subject matter jurisdiction to restrain the ongoing proceedings at FDIC to terminate Asquino's employment contract. Having so determined, the Court need not and does not reach FDIC's alternative arguments. Accordingly, the Court will grant FDIC's Motion to Dismiss.