**AMERICAN MEDICORP, INC., Plaintiff,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.**

**No. 77 C 3865.**

United States District Court,
N. D. Illinois, E. D.

Dec. 30, 1977.

---

**6**

Jerold S. Solovy, Michael J. Rovell, Chester T. Kamin, Leland J. Badger, Carter H. Klein, Lisa Salkovitz, Chicago, Jenner & Block, Chicago (of counsel), Reavis & McGrath, New York City, for plaintiff.

John Bleveans, Richard A. Cole, Robert K. Hagan, Chicago, Mayer, Brown & Platt, Chicago (of counsel), for defendant.

## DECISION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

McMILLEN, District Judge.

Plaintiff has filed a motion for preliminary injunction seeking three specific items of relief. Subparagraph (b) of the motion has already been granted in substance by our decision entered December 5, 1977. Subparagraph (c) is a generalized prayer for relief which is not being actively pursued at this time. Subparagraph (a), now under consideration, requests an injunction against the defendant from

(a) lending any money or otherwise extending credit to Humana, Inc. ("Humana"), in connection with any exchange or tender offer by Humana for the common stock of American [plaintiff].

We held a partial hearing on subparagraph (a) on December 5, 1977, and requested the parties to submit the balance of their case in the form of depositions, documents

and briefs, after which we would determine whether or not further hearings would be necessary. After having examined these documents and the law upon which plaintiff relies, we have come to the conclusion that it is not entitled to a preliminary injunction and that no further hearings on this issue are necessary, as to paragraph (a) supra.

The controversy has arisen because defendant Continental Illinois National Bank and Trust Company of Chicago has loaned money to the plaintiff and has performed other banking services for it in the course of which defendant acquired a file of "non-public" financial and other information furnished by the plaintiff. After the relationship had flourished for about a year, Continental agreed to participate in a loan to Humana, Inc. which allegedly would enable that company to make an offer for plaintiff's common stock and might thereby change the controlling interest of the plaintiff corporation, transferring it to Humana, Inc. Humana was also a customer of the defendant bank and had obtained loans from it.

Plaintiff now contends that making a loan to a company which desires to take over the control of one of Continental's customers which has supplied confidential data to the bank is a *per se* breach of a fiduciary obligation which should be enjoined. Plaintiff contends, alternatively, that defendant Continental itself used some of the "non-public" information in determining whether or not to make the loan. We assume that both of these alternatives are intended to be covered by Count I of the complaint. Count II alleges that defendant "furnished" confidential business information to Humana, although it is not alleged that Humana did anything with the information.

Plaintiff contends that it need not show irreparable harm. Because it is relying on a breach or potential breach of an alleged fiduciary obligation, plaintiff contends that a court of equity should prevent the breach as a matter of course. We believe that this position is probably sound when necessary to protect a true fiduciary relationship,

since once the relationship is breached, it is effectively destroyed. Most of the decisions requiring the showing of irreparable harm do not involve a fiduciary relationship or the breach of it.

A recent case summarizing the prerequisites for a preliminary injunction in this Circuit is *Fox Valley Harvestore Inc. v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096 at 1097 (7th Cir. 1976). The first prerequisite is that "the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue." We assume that the lack of an adequate remedy at law ordinarily means that money damages would not remedy the breach. In an attempt to satisfy this requirement, plaintiff argues in the alternative that it will sustain irreparable harm if the loan to Humana is permitted. Plaintiff states, for example, that the offer being made by Humana is below current book value and does not take into account plaintiff's five-year earnings projection. Furthermore, it states that it may lose key employees to other companies because of the detrimental effect which a takeover offer may have on morale. The language of the Seventh Circuit in *Fox Valley,* however, requires more than speculation on these issues, by the use of the phrase "*will* be irreparably harmed."

There are several alternatives to such harm in the case at bar. In the first place, the tender offer will not even be made if the proxy material is not released by the S.E.C. or does not survive the other litigation now pending elsewhere. Furthermore, the stockholders are not required to accept the offer, and their acceptance will constitute persuasive evidence that they received fair market value for the stock. Finally, there is no evidence that Humana cannot manage the plaintiff as successfully as its present management does. Therefore, even if irreparable damage is a prerequisite to a preliminary injunction, the plaintiff corporation has not satisfied it.

The second requirement of *Fox Valley* is that "the threatened injury to the plaintiffs outweighs the threatened harm the injunc-

tion may inflict on the defendant." Since we have difficulty in finding any real injury threatened to the plaintiff, as stated above, the harm which an injunction may inflict on the defendant clearly outweighs the threatened harm to the plaintiff in this case. A preliminary injunction against the defendant would prevent the loan from being made on what we assume would be favorable terms for the defendant, not the least of which might be from the possibility of doing future business with Humana. On the other hand, since this alleged breach has occurred, defendant cannot look forward optimistically to future business from the plaintiff. We find and conclude that, to the extent that the second criterion of *Fox Valley* is applicable to a case involving an alleged breach of fiduciary duty, plaintiff has not satisfied it.

The third criterion, in our opinion, reaches the crux of this case: "the plaintiffs have at least a reasonable likelihood of success on the merits." Even if the first two criteria are not applicable, certainly the third criterion is. As to its first theory of Count I, plaintiff has cited no cases supporting a complete prohibition against lending money to a company seeking to take over one of the bank's customers which has provided it with "non-public" information. The cases relied upon by plaintiff, such as *Trice v. Comstock*, 121 F. 620 (8th Cir. 1903) and *Tyler v. Sanborn*, 128 Ill. 136, 21 N.E. 193 (1889), involve the breach of a fiduciary obligation, but they do not require us to go this far. Despite the stringent governmental regulations to which Federal banks are subject today, this limitation has not been imposed. We reject the plaintiff's argument on this alternative and find that a bank is not precluded under all circumstances from making a loan to facilitate the attempted takeover of a customer. If it does not rely on the confidential information of its customers in its files, we believe that a bank is free to deal with any customer who comes to it.

This brings us to the crucial question of fact, in our opinion, and that is whether or not the bank used or relied upon any of the "non-public" information which plaintiff American supplies for defendant's use.

Such information includes many types of financial reports, including a five-year projection, all of which were obtained by the defendant in order to evaluate making a loan to the plaintiff and entering into other banking relationships with it. They are, we believe, the customary package of documents presented by a prospective borrower to a financier, and we assume they were presented with the understanding that they would be retained in a confidential posture within the bank, and also not released to outsiders. However, the prospective borrower will undoubtedly give the same information to other banks from which it desires a loan, to its accountants, its tax-preparers, and, to some extent, to its suppliers on credit and its stockholders and the public. It would therefore be very difficult to draw a line between the information which is legally "confidential" and only qualifiedly confidential in this case. We need not do so because plaintiff has not shown that it is reasonably likely to prove an improper use or dissemination of the materials furnished by plaintiff.

Plaintiff has shown that one of defendant's officers working on the Humana loan, John Willis, saw plaintiff's credit file, which had a 13-page summary attached. Willis "flipped through" the summary and extracted portions concerning defendant's proposed loans to plaintiff. There is no showing, however, that Willis conveyed this information to anyone or that it was used in deciding to loan to Humana. Another of the defendant's officers involved in the Humana loan, Leonard Busse, also had read some of the material which was in this file when he worked on a loan to plaintiff a year before. However, these documents involved proposals for financing a hospital, and he testified that he did not know whether the proposal had been consummated; nor is there any evidence that he used this information with the individual ultimately responsible for approving the loan to Humana. Furthermore, an informal meeting occurred over coffee between two loan officers working on the Humana loan (Busse and Rohr) and two working on the plaintiff's account. At that time, the latter two officers were told that the defendant

was considering helping finance the Humana tender offer. The officers discussed the amount of business which the defendant might lose from the plaintiff, specifically the amount of proposed loans to the plaintiff, but again, there is no showing that the information was used in deciding to make the Humana loan or transmitted to the officer primarily in charge of it.

This individual, Hollis Rademacher, testified that his principal inquiry was whether Humana had the financial ability to support the transaction by itself. He testified that he was not concerned with the financial condition of the plaintiff, and Busse likewise testified that plaintiff's cash flow was not considered in determining whether Humana might be able to pay back the loan. An officer of the First National Bank of Boston, Robert Woods, also testified that his bank believed that Humana could repay the loan without regard to what it might acquire from the plaintiff, and it was upon this basis that the First National Bank in Boston was willing to lend half of the amount necessary for the tender offer (Woods deposition pp. 66–67). This approach seems plausible to us empirically, because there are many contingencies which make the takeover speculative, and a bank would not therefore be using good business judgment if it made a loan on the assumption that the assets of the company to be acquired were required to repay the loan.

Plaintiff finally argues that a document prepared by one of the bank's attorneys informed the First National Bank of Boston and Humana that plaintiff had supplied certain financial data, including projected earnings, and that the bank would not disclose this information. Since the bank was willing to make the loan, the First National Bank of Boston and Humana could infer that the "non-public" information possessed by the defendant was favorable. We cannot give any great weight to this argument, primarily because the memorandum is not dated and its delivery date is unknown, but more significantly, it does not tell the outsiders anything which they did not already know or should be able to infer. They knew or could easily have discovered that the plaintiff was a customer of the defendant and had a substantial business banking relationship with it, from which it would follow that Continental had obtained considerable favorable information from the plaintiff. The attorneys for the bank state that the memorandum is "erroneous" and offer to produce the writer of it to so testify. Since we are not giving it any particular significance at this time, we see no need to take evidence on this point.

To summarize the evidence, there is none on disclosure to third parties. The fact that some of defendant's officers who were responsible for the Humana loan obtained, saw, touched, and to some extent used and interchanged information from the defendant's files on plaintiff, in our opinion, is not a *per se* violation of a trust. Finally, that evidence, taken as a whole, is insufficient to satisfy us that plaintiff will probably be able to prove that defendant used confidential information received from plaintiff in deciding to loan to Humana. At best, the inferences that the defendant actually used "non-public" information in deciding on the Humana loan are so weak that at this point we would find to the contrary.

The fourth criterion in *Fox Valley* is that a preliminary injunction "will not disserve the public interest." The public interest in this case is in limbo. Defendant would have a greater claim to the public interest if Humana's proxy statement had been approved and the other litigation had been disposed of, favorably to Humana. On the other hand, to issue an injunction under the conditions presented to us would tend to disrupt the normal processes of the S.E.C. and of the anti-trust laws. It would also tend to burden the free flow of bank financing and the ability which a bank now has to deal with customers who may have adverse interests to other customers. We therefore find and conclude that a preliminary injunction would "disserve" the public interest even if the other *Fox Valley* criteria had been satisfied.

Since the plaintiff has not shown to our satisfaction that it has a reasonable likelihood of success on the merits, either on Count I or Count II, we will deny a preliminary injunction for failure to satisfy this criterion. Alternatively, if plaintiff must

also show that it will be irreparably harmed, we find and conclude that this criterion has not been satisfied. Thirdly, plaintiff has not satisfied us that the injury to itself as a corporate entity outweighs the threatened harm which an injunction may cause to the defendant and that a preliminary injunction should be denied on this ground also.

The most serious deficiency in the plaintiff's case at this point, however, is that it has not shown a reasonable likelihood that it will prevail ultimately on the merits, either on the theory that the defendant should never lend money to a customer desiring to take over one of the bank's other customers who has furnished non-public data to the bank or on the alternative theory that such a loan should be enjoined if it is shown that the bank has used such non-public financial information in order to determine whether or not to make the loan or has revealed this information to a third person who has used it for that purpose.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiff's motion for a preliminary injunction is denied.