Miles v. New Shoreham, et al.        CV-95-356-JM  07/29/96

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>Miles-Un-Ltd., Inc., Aldos</u>
<u>Mopeds, Inc., Finnimore & Fisher,</u>
<u>Inc., Ocean State Bikes, Inc. and</u>
<u>M & J Transportation, Inc. and</u>
<u>The Moped Man, Inc.</u>

                                    NH Civil No. 95-356-JM
        v.                          RI Civil No. 95-CV-326B
                                    RI Civil No. 95-456-ML

<u>Town of New Shoreham, RI, Mary Jane</u>
<u>Balser, Edward F. McGovern, Jr.,</u>
<u>Kimberly Gaffett, Anthony Edwards,</u>
<u>Martha Ball, Everett Littlefield,</u>
<u>Douglas H. Michel and Susan Shea</u>


# O R D E R


        Plaintiffs, Miles-Un-Ltd, Inc., Aldos Mopeds, Inc.,

Finnimore & Fisher, Inc., Ocean State Bikes, Inc., M & J

Transportation, Inc., and The Moped Man, Inc. bring the

underlying action against the Town of New Shoreham, Rhode Island,

Mary Jane Balser, Edward F. McGovern, Jr., Kimberly Gaffett,

Anthony Edwards, Martha Ball, Everett Littlefield, Douglas H.

Michel and Susan Shea challenging the constitutionality of an

amended ordinance which places restrictions on the rental of

mopeds.

        Now for the court's consideration are defendants' Motion for

Summary Judgment (document no. 20) and plaintiffs' Amended Motion

for Preliminary Injunction Pendente Lite (document no. 35).

BACKGROUND

The Town of New Shoreham is a municipal corporation located on Block Island, an island of approximately ten square miles situated some twelve miles off the mainland coast of Rhode Island. The year-round population of Block Island is roughly 800 residents. However, the island's population increases dramatically in the summertime because the island is a popular summertime destination for tourists.

In October, 1994, the New Shoreham Town Council conducted a public hearing regarding a proposed amendment to a then existing ordinance. The then existing ordinance, called "Motorized Cycle Rental," prevented commercial moped rentals to the public without a town license, restricted the number of licenses available, and limited the number of mopeds each licensee could rent to fifty (50). New Shoreham Code of Ordinances, Article V, Section 8-87. The advanced amendment sought the reduction of the number of mopeds each licensee could rent from fifty to forty during the 1995 season and from forty to thirty for the 1996 and subsequent seasons. The Town of New Shoreham's authority to enact the proposed amendment was premised on Rhode Island General Laws § 31-19.3-5, which states in pertinent part:

> The Town Council of the Town of New Shoreham may enact
> reasonable ordinances establishing procedures and standards
> for the licensing, supervision, regulation and control of
> the rental of motorized bicycles and motorized tricycles.

2

An ordinance enacted pursuant to this section may:

\*                              \*                              \*

(d) establish a maximum number of motorized bicycles and or motorized tricycles which a license holder may rent or lease under said license.

According to the defendants, the necessity for the amendment was supported by graphic and compelling evidence addressing the complications associated with substantial moped activity. Specifically, evidence depicted the dangers to public health and safety caused by operation of mopeds on the island. Also presented and addressed at the hearing was evidence relating to the degree to which moped accidents overburden the island's limited medical resources. At the conclusion of the public hearing, the New Shoreham Town Council voted to adopt the proposed amendment. The amended ordinance became effective on October 24, 1994.

Subsequent to the enactment of the amended ordinance, the plaintiffs filed the instant action seeking injunctive relief, compensatory and punitive damages, and a declaratory judgment declaring Ordinance 8-87, as amended, void as violative of constitutional rights and Rhode Island law. Specifically, plaintiffs allege that the enactment of the amended ordinance (1) violates the Commerce Clause of the United States Constitution; (2) constitutes an unlawful taking without just compensation in

3

violation of the Fifth and Fourteenth Amendments of the United States Constitution; (3) violates Equal Protection and Due Process rights afforded by the United States Constitution; and (4) intentionally interferes with contractual relations.

I.  Defendants' Motion for Summary Judgment

The defendants have now presented to the court a Motion for Summary Judgment.  Defendants argue that they are entitled to summary judgment because plaintiffs cannot establish the elements essential to their constitutional and/or state law claims.

DISCUSSION

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

In summary judgment proceedings, the moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).  If the moving party carries its burden, the non-moving party must set forth specific facts showing that there remains a genuine issue of material fact for trial, demonstrating "some factual

4

disagreement sufficient to deflect <u>brevis</u> disposition." <u>Mesnick</u> <u>v. General Electric Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991), <u>cert.</u> <u>denied</u>, 504 U.S. 985, 112 S. Ct. 2965, 119 L.Ed.2d 586 (1992). In the context of summary judgment, "`genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party, [and] `material' means that the fact is one that `might affect the outcome of the suit under the governing law.'" <u>United States v.</u> <u>One Parcel of Real Property with Bldgs.</u>, 960 F.2d 200, 204 (1st Cir. 1992) (citing <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510).

In summary judgment proceedings, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]he non-mov[ing party] cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." <u>Rivera-</u> <u>Muriente v. Agosto-Alicea</u>, 959 F.2d 349, 352 (1st Cir. 1992). "[S]ummary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences,

and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

With the above principles in mind, the court considers the specific contentions raised in defendants' motion for summary judgment.


A.    Commerce Clause claim

In seeking summary judgment on plaintiffs' commerce clause violation allegation, defendants rely on the following:

> [T]he purpose behind the ordinance [at issue] is an effort to decrease the number of injuries and accidents related to moped rentals.  The U.S. Supreme Court has given great deference to regulations that affect highway safety.  Such regulations have a strong presumption of validity.  The validity of New Shoreham's ordinance was explored on October 17, 1994, during a public meeting.  At that time, evidence was introduced to support the Town Council's determination that the best means of resolving the high accident and injury rate associated with moped rentals was to reduce the number of mopeds on the streets. . . .  Certainly, an amended ordinance reducing the number of mopeds on the road at any given time advances a legitimate local purpose, i.e. the safety of all involved.  Thus, . . . the amended ordinance advances a strong local benefit that far outweighs any alleged burden on interstate commerce.  As such, because the incidental burden espoused by plaintiffs is not "clearly excessive," neither the enabling statute nor the amended ordinance violates the Commerce Clause . . . .

Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defendants' Memorandum") at pages 22-23.


In opposing defendants' request for summary judgment on the commerce clause issue, plaintiffs state that "[w]henever a state

safety regulation comes under commerce clause attack, a court must engage in a balancing test where it weighs the asserted safety purpose against the degree of interference with interstate commerce."  Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendants' Motion for Summary Judgment (Plaintiffs' Memorandum) at page 12.  As such, in considering the parameters of commerce clause protection, a "court may not confine its analysis to whether the regulation is rational in light of its purpose, [but rather] it must decide whether the regulation in fact promotes its intended purpose in a significant way."  Id.  With respect to the question of whether the New Shoreham ordinance restricting moped rental promotes its intended purpose, plaintiffs suggest that they "will prove at trial that the moped reduction ordinance was not only conceived upon erroneous premises, but that the regulation in fact does not promote its intended purpose in a significant way and its only real effect is to seriously impede interstate commerce."  Id.  Plaintiffs state that they can show "that the ordinance is unreasonable and excessive because the other purported reasons for its implementation were a pretext and a sham."  Id. at 16.

The commerce clause of the United States Constitution provides, in pertinent part, that "[t]he Congress shall have power . . . to regulate Commerce with foreign nations, and among

7

the several states, and with the Indian tribes." U.S. Const. Art. I, § 8. Through negative implication, the "dormant" commerce clause restricts the authority of states to regulate commerce even in the absence of Congressional action. Oregon Waste Systems v. Dept. of Env. Quality, 511 U.S. 93, --, 114 S. Ct. 1345, 1349, 128 L.Ed.2d 13 (1994); CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 107 S. Ct. 1637, 95 L.Ed.2d 67 (1987).

The "dormant" Commerce Clause functions in this latter role by denying "the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Oregon Waste Systems, supra; C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, ---, 114 S. Ct. 1677, 1682-83, 128 L.Ed.2d 399 (1994). "The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." CTS Corp., 481 U.S. at 86-87, 107 S. Ct. at 1648. Just as states are bound by the restrictions imposed by the Commerce Clause, so too are municipal governments. See Dean Milk Co. v. City of Madison, Wis., 340 U.S. 349, 352-354, 71 S. Ct. 295, 297, 95 L.Ed. 329 (1951); Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources, 504 U.S. 353, 112 S. Ct. 2019, 119 L.Ed.2d 139 (1992) (affirming application of dormant Commerce Clause not merely to State-

8

imposed discrimination against, or burdens on, interstate commerce, but also to actions employed by political subdivisions of the States which burden interstate commerce).

Given the commerce clause's intent or purpose to address discriminatory measures adopted by state or local governments, courts have generated a graduated level of review for state or local actions that purport to be in furtherance of health, safety and welfare concerns. Under the graduated review, where a particular regulation is little more than "simple protectionism," - because it discriminates against interstate commerce either on its face or in effect - the regulation is subject to a heightened level of scrutiny that can give way to a virtually per se rule of invalidity. City of Philadelphia v. New Jersey, 437 U.S. 617, 623-624, 98 S. Ct. 2531, 2535, 57 L.Ed.2d 475 (1978); Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 268-272, 104 S. Ct. 3049, 3054-3055, 82 L.Ed.2d 200 (1984). "'[F]acial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives.' Hughes v. Oklahoma, 441 U.S. 322, 337 (1979)." Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 342-43, 112 S. Ct. 2009, 2014, 119 L.Ed.2d 121 (1992). This "heightened scrutiny" standard is also a pertinent consideration to statutes that "adversely affect interstate commerce by subjecting activities to

inconsistent regulations." CTS Corp., 481 U.S. at 88, 107 S. Ct. at 1649.

Conversely, under the second level of the graduated review "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L.Ed.2d 174 (1970). Under the Pike test, "[i]f a legitimate local purpose is found, then the question becomes one of degree." Id. The extent of the burden on interstate commerce that will be allowed will depend on the "nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Id.; Philadelphia, 437 U.S. at 624, 98 S. Ct. at 2535.

Boiling the Pike test down to its essence, a court evaluating an assertion that a particular regulation is violative of the commerce clause, despite its even-handed operation, shall consider (1) the nature of the putative local benefits advanced by the regulation; (2) the burden the regulation imposes on interstate commerce; (3) whether the burden is "clearly excessive in relation to" the local benefits; and (4) whether the local

10

interests can be promoted as well with a lesser impact on interstate commerce. Pike, 397 U.S. at 142, 90 S. Ct. at 847.

In the instant case, without question the amended ordinance limiting the number of mopeds that may be rented by a licensee operates even-handedly. This conclusion derives from the fact that the moped regulation does not treat differently out-of-state and in-state moped rental businesses or out-of-state and in-state moped rental services. The ordinance also does not amount to a clearly discriminatory regulation by conferring a benefit on in-state business at the expense of out-of-state businesses.

Given that this is not a case in which facial discrimination should give way to a per se rule of a regulation's invalidity, the test for determining whether the New Shoreham regulation violates the commerce clause is whether the regulation imposes an unreasonable burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142, 90 S. Ct. at 847.

Recognizing that the "clearly excessive" analysis is the pertinent standard to apply, defendants in this case acknowledge that a large number of tourists from outside the State of Rhode Island are attracted to Block Island each year. Defendants' Memorandum at page 22. Defendants further acknowledge that the "movement of people" from one state to another falls within the

11

rubric of activity effecting interstate commerce. Id. (citing Heart of Atlanta Motel, Inc. v. U.S., 379 U.S. 241, 255 (1964) (the determinative test of the exercise of power by Congress under the Commerce Clause is simply whether the activity sought to be regulated is "commerce which concerns more states than one")). Defendants contend, however, that the purpose behind the ordinance is an effort to decrease the number of injuries and accidents related to moped rentals, and this purpose of regulating highway safety should be given great deference, which in turn should warrant a finding that the ordinance is not excessive in relation to the local benefits.

The Supreme Court, in Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 669 (1981), avowed that

> [t]he Commerce Clause does not, of course, invalidate all state restrictions on commerce. It has long been recognized that, "in the absence of conflicting legislation by Congress, there is a residuum of power in the state that make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." Southern Pacific Co. v. Arizona, 325 U.S. 761, 767 (1945).

The Supreme Court went on to note that "a State's power to regulate commerce is never greater than in matters traditionally of local concern." Kassel, 450 U.S. at 670. "For example, regulations that touch upon safety - especially highway safety - are those that `the Court has been most reluctant to

12

invalidate.'" Id. (quoting Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 443 (1978)).

However, irrespective of the strong presumption of validity afforded safety regulations, the presumption is obviously subject to rebuttal. For example, if the justifications supporting a safety regulation are illusory, a court may be justified in giving less credence to a state's initiative or power. Kassel, 450 U.S. at 670. Stated another way, if the purpose of promoting the public health and safety is a mere incantation or ruse, a state law may not be insulated from Commerce Clause attack or challenge. Id. After all, "[r]egulations designed for the salutary purpose [of promoting the public health and safety] nevertheless may further the purpose so marginally, and interfere with commerce so substantially, as to be invalid under the Commerce Clause." Id.

Here, plaintiffs allege in their opposition to defendants' motion for summary judgment that the "moped reduction ordinance was not only conceived upon erroneous premises, but [] the regulation in fact does not promote its intended purpose in a significant way and its only real effect is to seriously impede interstate commerce." Plaintiffs' Memorandum at page 12. As support for this assertion, plaintiffs offer the following:

> Despite the fact that there were only 200 mopeds on the road in 1995, there were 70 moped accidents reported to the

13

police. In comparison, in 1992, 1991 and 1990, when there were 300 mopeds on the road, there were 77, 67 and 69 moped accidents reported to police respectively for each year. Thus, there has been no statistically significant reduction in the number of accidents, in fact, there has been an increase since the number of mopeds has been reduced.

Moreover, the plaintiffs correctly note that a regulation may be deemed violative of the commerce clause if its effects do not comport with a legitimate purpose. As pronounced by the Supreme Court:

> Our Commerce Clause jurisprudence is not so rigid as to be controlled by the form by which a State erects barriers to commerce. Rather our cases have eschewed formalism for a sensitive, case-by case analysis of purposes and effects. As the Court declared over 50 years ago: "The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

West Lynn Creamery, Inc. v. Healy, 114 S. Ct. 2205, 2215-16, 129 L.Ed.2d 157 (1994) (quoting Best & Co. v. Maxwell, 311 U.S. 454, 455-456, 61 S. Ct. 334, 335, 85 L.Ed. 275 (1940)) (emphasis added).

Plaintiffs also aver that the ordinance at issue is not rationally related to its intended purpose because the purported reasons for its implementation were a pretext and a sham. On this issue, plaintiffs offer that at the time when the moped ordinance was considered by the Town Council, the severity of moped accidents was vastly exaggerated by the Island's doctor and inconsistent with his own prior testimony. Consequently,

14

plaintiffs maintain that to the extent the Town Council's decision to implement the ordinance was based on the doctor's proffer, the decision was predicated on non-credible and non-objective criterion.

In juxtaposing the evidence plaintiffs intend to offer in this case with those situations where the Supreme Court has held that a state's safety related regulation runs afoul of the commerce clause, the court is content that the issues of fact raised by the plaintiffs present genuine issues of material fact that are properly left for resolution by trial. Fundamentally, plaintiffs have first raised a question as to whether the evidence available to the New Shoreham Town Council members was sufficient to support their conclusion that passage of the ordinance was necessary to promote the health and safety of the citizenry or whether their safety impetus was merely illusory. Kassel, 450 U.S. at 680 (Brennan, J., concurring) (In determining local benefits to be achieved by implementation of a regulation, "a court should focus ultimately on the regulatory purposes identified by the lawmakers and on the evidence before or available to them that might have supported their judgment."). Second, the plaintiffs have raised a question concerning whether the effect of the ordinance has achieved the desired purpose so marginally as to constitute an impermissible and unreasonable

15

restriction on interstate commerce.  Id. at 678 ("The controlling factors [in a commerce clause challenge] are the findings . . . with respect to the relative safety of the types of trucks at issue, and the substantiality of the burden on interstate commerce.")[1].  The balancing by a court of the justification for a safety regulation "requires - and indeed the constitutionality of the state regulation depends on - `a sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce.'"  Id. at 670-71 (quoting Raymond Motor Transportation, Inc., 434 U.S. at 441).

Defendants assert that plaintiffs lack standing to assert a constitutional violation because they operate a purely intrastate business and the impact of the ordinance is not upon them but upon interstate tourists.  Defendants' Memorandum at pages 23-24. While plaintiffs do operate intrastate they service interstate travelers.  As it relates to interstate commerce, renting mopeds to interstate travelers is not distinguishable from renting motel rooms to interstate travelers.  See Atlanta Motel, 379 U.S. at

---

[1]In noting the controlling factors to consider during a commerce clause challenge to a state imposed regulation, the Supreme Court deferred, in part, to the findings by the District Court which, in turn, evaluated and considered whether the "total effect" of the law has in fact paralleled the purpose behind the regulation.  Consolidated Freightways Corp., etc. v. Kassel, 475 F. Supp. 544, 551 (S.D.Iowa 1979).

16

258. Plaintiffs do have standing since they are asserting their own rights to rent mopeds to interstate travelers. They have suffered an injury in the reduction of mopeds for rent which is directly related to the ordinance and the injury can be redressed by a favorable decision. <u>Washington Legal Foundation v. Massachusetts Bar Foundation</u>, 993 F.2d 962, 971-2 (1st Cir. 1993).

Given the outstanding issues remaining in this proceeding with respect to plaintiffs' commerce clause claim, defendants' request for summary judgment on this claim must be and is denied.

B. <u>Taking Without Just Compensation Claim And Without Due Process Of Law</u>

Defendants contend that they are entitled to summary judgment on plaintiffs' Fifth Amendment "takings" claim because plaintiffs have failed to establish essential elements of that claim. Namely, defendants suggest that no applicable statute gives plaintiffs a reasonable expectation that they possess a right to rent a set amount of mopeds. Defendants' Memorandum at page 7. Accordingly, because no statute or regulation confers on the plaintiffs a property interest involving moped renting, "plaintiffs have no legitimate expectation of entitlement to the rental of any particular number of mopeds and thus do not have a constitutionally protected property interest in the rental of

17

mopeds." Id. at 8.

Whether considering a taking under either the Fourteenth Amendment Due Process Clause or the Fifth Amendment, an essential element to each is the establishment of a property interest.

In support of their "takings" claim, plaintiffs assert that as owners and operators of moped businesses they have had a mutual understanding with the Town that the number of mopeds that they would be allowed to rent would remain constant. Plaintiffs allege that "the effect of the ordinance in this case is to deprive them of economically beneficial or productive use of their property" in direct contravention of the long-standing mutual understanding. Plaintiffs' Memorandum at page 25.

The Fifth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that private property may not be taken for public use without just compensation. One of the major purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S. Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). A primary principle of the Fifth Amendment is that if a governmental regulation has the effect of creating a constant physical occupation, the action will be deemed a taking. Nollan

18

v. California Coastal Commission, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145, 97 L.Ed.2d 677 (1987).  A physical occupation will constitute a taking despite that fact that the particular amount taken is relatively insubstantial.  Loretto v. Teleprompter Manhattan CATV, 458 U.S. 419, 430, 102 S. Ct. 3164, 3173, 73 L.Ed.2d 868 (1982).  As noted by the Supreme Court:

> [W]hen the "character of the governmental action" is a permanent physical occupation of the property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit, or has only minimal economic impact on the owner.

Id. at 434-35, 102 S. Ct. at 3175.

In order to state a prima facie claim under the Fifth Amendment, a party must first establish a recognizable property interest that is protected.  Washington Legal Foundation, 993 F.2d at 962, 973.  What constitutes a protected property interest is "defined by existing rules or understandings that stem from an independent source such as state law."  Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161, 101 S. Ct. 446, 451 (1980).  Notably, "[n]ot all asserted property interests are protected."  Washington Legal Foundation, 993 F.2d at 973.  For instance, "a mere unilateral expectation or an abstract need is not a property interest entitled to protection."  Webb's Fabulous Pharmacies, Inc., 449 U.S. at 161, 101 S. Ct. at 451.

19

Here, plaintiffs assert that a cognizable property interest is established from the understanding with the town that the number of mopeds which could be rented would remain constant. Plaintiffs do not maintain that they have any property interest arising out of a statute or a contract, but rather from an understanding with the town. Plaintiffs rely on Blackburn v. City of Marshall, et al., 42 F.3d 925, 936 (5th Cir. 1995) for their proposition.

The First Circuit's expression of a protected property interest is less expansive than that of the Fifth Circuit:

> "An interest becomes a protected property interest when recognized by state statute or legal contract, express or implied, between the state agency and the individual."

Marrero-Garcia v. Irizarry, 33 F.3d 117, 121 (1st Cir. 1994) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Whether the First Circuit would include among protected property interests, "mutually explicit understandings" or only express or implied contracts need not be decided because both principles have one element in common - mutual agreement. Mutual agreement is a necessary element of a contract 'implied in fact' under Rhode Island law. Bailey v. West, 105 R.I. 61, 249 A.2d 414, 416 (R.I.). Rhode Island law is determinative as to what is necessary to create an implied contract sufficient to create a property interest. See Board of Regents, 408 U.S. at 577.

20

The only facts pointed to by plaintiffs to establish a mutual agreement or mutually explicit understandings are statements by defendant McGovern. The statements of Councilor McGovern advanced to support their claim that a particular understanding existed are the following three deposition questions and answers:

Q. And it was your belief, at the time the Town received regulatory authority from the State, that the Town of New Shoreham had a problem with rental mopeds, correct?
A. Yes.
Q. But it was also your belief that when the Town was given that regulatory authority by the General Assembly, that the problem had not been solved in your opinion; isn't that correct?
                    Mr. O'Keefe:  Objection.
A. I would have to say, yes.  I think there was still 300 mopeds on the road.
Q. Okay.  What do you mean by that there were still 300 mopeds on the road?
A. Well, the regulatory authority--I mean the Town had gone looking to do something to either reduce the numbers, and that didn't happen.  What happened is basically the regulatory authority the Town received allowed for the current number of operators to continue operating.  That no more operators begin operating, <u>and that the numbers remain pretty much the way that they were</u> (emphasis supplied).

See Appendix, Exhibit "32", p.49, lines 12-24 and p.50, lines 1-9.

The portion of the deposition relied on by plaintiffs does not establish in any way a mutual understanding between plaintiffs and the Town that the number of mopeds that could be rented by individual businesses should or must remain the same. If anything, it establishes only the understanding of defendant

21

McGovern as to the intent of the enabling legislation. The legislation itself does not reference 300 mopeds. Notwithstanding the fact that plaintiffs would have the court accept McGovern's testimony as a concession that a property interest exists, McGovern's testimony simply does not suggest the situation where a particular interest has been "arbitrarily undermined." Board of Regents, 408 U.S. at 577.

In fact, it is not clear that the underlined portion of McGovern's testimony even refers to the number of mopeds. In context, it appears to refer to the number of operators staying "the way that they were." If the town's understanding of its regulatory authority was that the number of operators should remain constant, the most that plaintiffs may claim as protectable property is their general interests in their licenses. These interests are not at issue in this case.

To recapitulate, the plaintiffs have not demonstrated that they have a protected property interest, based upon mutually explicit understandings between themselves and the town, to rent the same number (50) of mopeds each year after the General Assembly gave the town regulatory authority over rental mopeds in 1984. Instead, plaintiffs have alleged an interest that is more akin to a unilateral expectation. Without question, unilateral expectations do not receive constitutional protection. Castro v.

22

<u>United States</u>, 775 F.2d 399, 405 (1st Cir. 1985) (to claim a
property interest in a benefit, a person must have more than a
unilateral expectation of it; he must have a legitimate claim of
entitlement to it) (citing <u>Board of Regents</u>, 408 U.S. at 577);
<u>Daley v. Town of New Durham</u>, 733 F.2d 4, 7 (1st Cir. 1984)
(unilateral expectation did not rise to level of property
interest protected by United States Constitution) (citing <u>Bishop
v. Wood</u>, 426 U.S. 341, 344 (1976)).  In light of plaintiffs'
inability to establish the existence of a property interest in
the renting of a certain number of mopeds, the court concludes
that plaintiffs have failed, as a matter of law, to establish an
element essential to a "taking without just compensation" action.
In view of the failure to establish a protected property
interest, it is unnecessary to consider any other elements.
Accordingly, defendants' request for summary judgment on
plaintiffs' Fifth and Fourteenth Amendment claims is granted.

C.    <u>Equal Protection</u>

Plaintiffs allege that Rhode Island General Law (R.I.G.L.)
31-19.3-1[2] and Article V, Section 8-76, <u>et seq.</u>, of the Revised

_____

[2]The pertinent provision of the statute reads:

The town council of the Town of New Shoreham may enact
reasonable ordinances establishing procedures and standards
for licensing, supervision, regulation, and control of the

23

Ordinances of the Town of New Shoreham violate "the equal protection clause of the Fifth and Fourteenth Amendments in that they treat plaintiffs differently from other persons engaged in the rental of mopeds in the State of Rhode Island, without any rational basis for doing so."  Plaintiffs' Complaint at page 6. Plaintiffs also assert that the R.I.G.L. 31-19.3-1 and Article V, Section 8-76 of the Revised Ordinances violate the equal protection clause of the Constitution of the State of Rhode Island.[3]

In requesting summary judgment on plaintiffs' equal protection claim, defendants contend that the equal protection claim is fatally flawed because plaintiffs have failed to establish that Rhode Island and the Town of New Shoreham are treating them differently from similarly situated groups. Defendants submit that "Equal Protection guarantees are `designed to prevent the government from creating classifications which treat similar groups differently.'"  Defendants' Memorandum at page 14 (quoting Smothers v. Benitez, 806 F. Supp. 299, 301 (D.P.R. 1992)).

_____

rental of motorized bicycles and motorized tricycles.

[3]Given that analysis of plaintiffs' claim that the state statute and local ordinance violate rights guaranteed under the Rhode Island Constitution is on par with the analysis applicable to equal protection under the United States Constitution, the court will focus its attention on federal law.

24

The Fourteenth Amendment of the United States Constitution prohibits a state from denying to any person equal protection of the laws. The constitutional warranty of "equal protection of the laws" means that no person or class of persons shall be denied the protections afforded others in their lives, liberty, property, and pursuit of happiness. Generally speaking, the clause requires that persons under comparable circumstances be afforded equal protection in their enjoyment of rights and in the avoidance and rectification of wrongs.

Plaintiffs correctly maintain that both the state statute and the town ordinance are economic-based legislation. Unlike commerce clause challenges, an equal protection challenge to economic-based legislation does not permit a court to consider whether a regulation's purpose is a sham or ruse or whether the regulation furthers a purpose marginally and interferes with commerce substantially. Such equal protection analysis is a "rational basis" test.

"Absent a suspect classification or a fundamental right, courts will uphold economic and social legislation that distinguishes between two similarly situated groups as long as the classification is rationally related to a legitimate government objective." Fireside Nissan, Inc. v. Fanning, 30 F.3d 206, 219 (1st Cir. 1994); Whiting v. Town of Westerly, 942 F.2d

25

18, 23 (1st Cir. 1991). A regulation or statute will survive the "rational basis" analysis under the Equal Protection Clause if "any state of facts reasonably may be conceived to justify it." Dandridge v. Williams, 397 U.S. 471, 485, 90 S. Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S. Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). "A state's classification is not unconstitutional simply because it 'is not made with mathematical nicety or because in practice it results in some inequalities.'" Fireside Nissan, Inc., 30 F.3d at 219 (quoting Dandridge, 397 U.S. at 485, 90 S. Ct. at 1161). Moreover, a court is not empowered to second-guess a regulation, in the face of facts justifying the regulation, merely because a plaintiff questions an incidental purpose or effect of the regulation.

In first considering the town ordinance, it is clear that the ordinance does not treat plaintiffs differently from similarly situated groups nor does the town selectively enforce its regulation. Rather, all moped businesses in the Town of New Shoreham are subject to the same restrictions associated with the rental of mopeds. Those restrictions involve the requirement of obtaining a license to rent mopeds and the limitation that each license holder may rent no more than a certain number of mopeds.

Despite plaintiffs' argument that there is no current

26

justification for Block Island treating moped businesses differently from how such businesses are treated elsewhere, such as in the City of Newport, Rhode Island, plaintiffs misapply the equal protection analysis required in this case. Specifically, the ordinance at issue has as its objective safeguarding the health and safety of individuals enjoying the island, and this objective is rationally related to a legitimate government objective. A municipality, following its enactment of a regulation designed to protect the health, safety, and welfare of the public, cannot and should not come under equal protection scrutiny simply because another distant community, has taken a different approach to promoting health, safety and welfare. Local governments need not be overly concerned with the effect their regulations will have on distant governments nor should local governments be concerned with the effect distant governments' regulations will have on them since local and state government "are [individually] accorded wide latitude in the regulation of their local economies . . ., and rational distinctions may be made with substantially less than mathematical exactitude." New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Within the aforementioned latitude, legislatures are afforded the power to execute their program step-by-step, initiate regulations that only incrementally ameliorate a

27

perceived evil and defer complete elimination of an evil for future regulation.  Id.

When addressing equal protection challenges to economic type legislation such as the type here, this court is not empowered to sit as a superlegislature and judge the "wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  Id. Thus, because the plaintiffs' Equal Protection challenge is grounded in economic legislation, this court is obligated to defer to "legislative determinations . . . ."  Id.  The court will not strike a regulation simply because that regulation has not achieved its desired effect nor because there is evidence which contradicts some of the evidence relied upon in passing and justifying the regulation.  Where, as in this case, there were facts introduced at a hearing from which a legislative body could perceive a danger to the health and safety of individuals, the inquiry for equal protection purposes is not whether the resulting regulation addressing that danger could have been formulated "more artfully, more directly or more completely," Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 813, 96 S. Ct. 2488, 2499, 49 L.Ed.2d 220 (1976), but rather the question is whether any set of facts "reasonably may be conceived to justify it."  Bowen v. Gilliard, 483 U.S. 587, 600-01 (1987).

28

There is little question that the local ordinance at issue in this case is neither invidiously discriminatory nor wholly arbitrary, but rather is rationally related to a legitimate government interest and is based on justifiable facts. New Orleans, 427 U.S. at 303-04 ("in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment"); Bowen, 483 U.S. at 600-01. Very succinctly, during the course of the public hearing pertaining to the local ordinance, evidence and testimony was offered concerning the need for and propriety of the regulation. Evidence was also introduced and discussed involving the accident rates associated with moped use as compared to bicycle and automobile use. Finally, testimony was advanced concerning the relatively high number of physical injuries associated with moped operations on Block Island. This evidence, considered together, provides credible and reasonable facts to justify the regulation limiting the number of mopeds that can be rented by a license holder. There is a rational basis.

Based upon the evidence and discussion offered during the hearing pertaining to implementation of the ordinance at issue, evidence which directly pertains to health and safety concerns, the Town of New Shoreham was within its authority to enact a

regulation designed to protect the health, safety and welfare of its citizenry and the general public. Plaintiffs have not set forth sufficient facts to demonstrate that there are no "reasonably conceivable state of facts that could provide a rational basis" for implementation of the ordinance limiting the number of mopeds that may be rented by a license holder. F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S. Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). Instead, plaintiffs have attempted to chip away at the "rational basis" foundation by arguing that the defendants' "motive and scheme is to cause as much financial hardship through regulation, to effectuate the elimination of these businesses under the guise that mopeds seriously threaten public safety." Plaintiffs' Memorandum at page 30. Plaintiffs have also not set forth sufficient evidence to demonstrate or raise a question as to whether the ordinance is unfairly applied in a discriminatory manner or with a discriminatory purpose. See Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1886).

In light of the conclusion that the town ordinance is rationally related to a legitimate objective of reducing the danger and hazards associated with high moped activity on Block Island's roads, the defendants have established that they are entitled to summary judgment, as a matter of law, with respect to

30

plaintiffs' assertion that the implementation and enforcement of Ordinance 8-76, _et_ _seq._ of the Town of New Shoreham is violative of the Equal Protection Clause of United States and Rhode Island Constitutions. Accordingly, summary judgment will be granted on this claim.

In conjunction with their assertion that Ordinance 8-76 denies equal protection of the laws, plaintiffs also suggest that R.I.G.L. 31-19.3-1 denies equal protection since the state statute imposes on them financial burdens that are not required of or imposed on other moped operations existing in the State of Rhode Island. Plaintiffs state that a specific provision of the law is intended as a clear and distinct regulation of their business only. This provision states the following:

> The town council of the Town of New Shoreham may enact reasonable ordinances establishing procedures and standards for licensing, supervision, regulation, and control of the rental of motorized bicycles and motorized tricycles.

According to the plaintiffs, R.I.G.L. 31-19.3-1 "provides a general statement of purpose which, _inter alia_, outlines a putative increase in accidents as justification for the Defendant Town's rule-making authority regarding mopeds. However, this section and general statement are devoid of any required _legislative findings of fact_. Therefore, plaintiffs state, the state statute should be struck down as violating the Equal

31

Protection Clause of the Rhode Island and United States Constitutions" since the state legislature did not justify its law with sufficient facts and data. Plaintiffs' Memorandum at page 33.

The Supreme Court has held that "those attacking the rationality of [a] legislative classification have the burden `to negative every conceivable basis which might support it.'" FCC, 508 U.S. at 315 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)). Further, because courts "never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." FCC, 508 U.S. at 315.

In the instant case, plaintiffs seek to have R.I.G.L. 31-19.3-1 declared unconstitutional principally because the regulation does not express or declare the legislative findings of facts upon which the regulation is based. Plaintiffs' contention, however, is a bark up the wrong tree. The absence of legislative facts explaining particular distinctions or purposes behind a regulation, "has no significance in rational-basis analysis." Id. (citing Nordlinger v. Hahn, 505 U.S. 1, 5 (1992) (equal protection "does not demand for purposes of rational-basis review that a legislature or governing decision-maker actually

32

articulate at any time the purpose or rationale supporting its classification")). In other words, the facts and purposes that are behind enactment of R.I.G.L. 31-19.3-1 are "not subject to courtroom factfinding." FCC, 508 U.S. at 315. "`Only by faithful adherence to this guiding principle of [limited] judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.'" Id. (quoting Lehnhausen, supra, at 365).

Again, "[i]n the areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC, 508 U.S. at 313. Consequently, if there are plausible reasons for the enactment of a statute or regulation, under equal protection analysis judicial consideration need go no further and court intervention is unwarranted.

The Rhode Island General Assembly stated that the purpose of R.I.G.L. 31-19.3-1 is the following:

> The establishment of such procedures and standards is hereby declared to be a reasonable exercise of the police power of the general assembly and necessary to afford protection against the increasing number and severity of accidents involving motorized bicycles and motorized tricycles, the noise and the traffic congestion that their presence creates

33

within the town.  The general assembly further declares that it is in the interest of the public health, safety, and welfare that the rental of motorized bicycles and motorized tricycles in the town of New Shoreham be supervised, regulated, and controlled in accordance with the provisions of this chapter.

The reasons supporting the passage of R.I.G.L. 31-19.3-1 are not only plausible, but are also rationally related to promoting the health and safety of the public.  In light of this rational relationship, the court is not empowered "to judge the wisdom, fairness, or logic of legislative choices."  Id.  No doubt, embodied in the nation's constitution is the presumption that, "absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."  Vance v. Bradley, 440 U.S. 93, 97 (1979).

Defendants' motion for summary judgment, with respect to plaintiffs' claim that R.I.G.L. 31-19.3-1 denies equal protection of the laws under the Rhode Island and United States constitutions, is granted.

D.   Interference with contractual relations

Defendants lastly request summary judgment on plaintiffs' claim of intentional interference with contractual relations.  As

support for this request, defendants suggest that "the tort of interference with existing or prospective contractual relations requires proof of `an intent to do harm without justification.'" Defendants' Memorandum at page 25 (quoting Jolicoeur Furniture Co., v. Baldelli, 683 A.2d 740, 753 (R.I. 1995)). Defendants state that there is no proof of intent to do harm in this case and, in fact, there is sufficient justification for the enactment of the ordinance at issue.

In successfully maintaining a cause of action premised on interference with contractual relationships, a plaintiff must allege

> (1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff.

Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986).

In requesting summary judgment, the defendants have failed to overcome their burden of establishing that they are entitled to judgment as a matter of law on plaintiffs' contractual relations claim. Although defendants suggest that the hearing pertinent to the enactment of the ordinance confirms that the purpose behind the enactment was to ameliorate injuries and other harms caused by moped rentals, plaintiffs successfully counter this proposition by evidence sufficient to create questions of

fact and tending to prove that the justification is merely a ruse. Plaintiffs offer the history of the controversy to show a serious factual question as to whether defendants intended to impose financial harm by enacting and enforcing the ordinance now at issue. Plaintiffs also suggest that the "ruse" is evidenced by the fact that the ordinance has not had its intended effect and the information used or relied upon in passing the ordinance was inaccurate and biased.

Based on the arguments offered by the parties, the court is persuaded that a substantive issue remains as to whether defendants improperly interfered with plaintiffs' existing or prospective contractual relations. Namely, there exists in this case the question whether defendants intended to harm plaintiffs without justification. Because of this outstanding question, defendants' request for summary judgment on this claim is denied.

As a tangential consideration, defendants allege that the interference with contractual relations claim should be dismissed because they, as public officials, are immune from tort liability.

This court noted in its Order dated February 14, 1996 that the defendant Town Council members enjoy personal immunity from liability for damages and a testimonial privilege for their purely legislative acts. This court further noted, however,

certain exceptions to legislative immunity.  Among the exceptions are actions which are administrative acts or actions that are taken in bad faith and with malicious intent.  Here, the plaintiffs seek to hold the defendants liable for administrative acts and, to a lesser extent, for deeds done in bad faith.  To the extent plaintiffs are successful in backing their assertions with credible evidence, legislative immunity may not be so all-encompassing as to shield defendants from tort liability.  Thus, given the representations offered at this stage of the proceeding by the plaintiffs, the defendants' request for summary judgment on plaintiffs' tort claims based on immunity must be and herewith is denied.

## II.  Plaintiffs' Motion for Preliminary Injunction

Plaintiffs request the court, pursuant to Fed. R. Civ. P. 65, to enter a preliminary injunction preserving the status quo in this case and allow the operation of (40) mopeds by each licensee until this case can be tried on the merits.  Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction Pendent Lite at page 1.

DISCUSSION

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the

37

trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995) (citing Chalk v. United States Dist. Court Cent. Dist. of California, 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)).

In determining whether to grant a preliminary injunction, this court considers four factors. The four factors are: "(1) the likelihood of the movant's success on the merits[4]; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., the `hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld,' Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction." Gately v. Massachusetts, 2 F.3d 1221, 1224-25 (1st Cir. 1993); see Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995); Sunshine Development, Inc. v. F.D.I.C., 33 F.3d 106, 110 (1st Cir. 1994); Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988).

---

[4] Although each of the four factors pertaining to issuance of a preliminary injunction is significant, the sine qua non of the preliminary injunction standard is whether the movant is likely to succeed on the merits. Legault v. aRusso, 842 F. Supp. 1479, 1485 (D.N.H. 1994).

Subject to the prior determination of the court pertaining to defendants' request for summary judgment, the two claims remaining in this action are (1) a claim pertaining to violation of the commerce clause, and (2) a claim involving interference with existing or perspective contractual relations. Of these two claims, the court will narrow its preliminary injunction consideration to an evaluation of the commerce clause claim only.

In order to prevail on their commerce clause claim, plaintiffs must establish that the ordinance is "clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142, 90 S. Ct. at 847. The plaintiffs allege in their case that the "moped reduction ordinance was not only conceived upon erroneous premises, but [] the regulation in fact does not promote its intended purpose in a significant way and its only real effect is to seriously impede interstate commerce." As support for this assertion, plaintiffs offer statistical evidence pertaining to the number of moped accidents after the implementation of the contested ordinance. Indeed, the statistics offered by the plaintiffs suggest that the ordinance has had little to no effect on the accidents stemming from moped operation. Further, plaintiffs have suggested that evidence exists which indicates that the information relied upon in

39

passing or implementing the ordinance was a sham. Specifically, plaintiffs contend that at the time when the moped ordinance was being considered for implementation, the severity or magnitude of moped accidents was overwhelmingly exaggerated by the Island's doctor. Consequently, because the decision to implement a moped restriction was based on an exaggerated medical opinion, the decision was based on non-credible and non-objective criterion which cannot stand commerce clause scrutiny.

Considered together, the representations by the plaintiffs strongly exhibit that the local ordinance is excessive in relation to the putative local benefit. Based on this showing, plaintiffs have demonstrated a likelihood of success on the merits of the commerce clause claim.

In progressing with the four-part test employed for preliminary injunction requests, the second factor to consider in determining whether to grant preliminary injunction relief is the potential for irreparable harm. Without delving into a long discussion of the specific injuries potentially suffered by plaintiffs, the court is heedful that to the extent an injunction is not issued in this case the plaintiffs will undoubtedly suffer harm which cannot be compensated by exact dollar quantification. Succinctly, harm to good will and harm to reputation are types of injuries potentially and likely possible which are not and cannot

40

readily be measured in terms of monetary damages. <u>K-Mart Corp.</u>
<u>v. Oriental Plaza, Inc.</u>, 875 F.2d 907, 915 (1st Cir. 1989).

The third factor of the preliminary injunction analysis is a
consideration of the relevant equities. Plaintiffs have
demonstrated, rather convincingly, that the hardship imposed on
them if the injunction is not issued is greater than the hardship
imposed on defendants if the injunction is issued.
Fundamentally, plaintiffs stand to lose business if they are
precluded from renting a significant portion of their moped
fleet. In fact, the progressive rental fleet reductions imposed
by the defendants may well have the effect of forcing plaintiffs
totally out of business due to the inability to sustain an
acceptable profit. Conversely, issuing the injunction would
likely have little hardship to the defendants. Plaintiffs have
offered evidence that an increase in the number of mopeds allowed
on the roads would likely not dramatically give way to an
increase in the number of accidents and injuries or place a
strain on the island's full time physician. As support for this
contention, plaintiffs refer to specific data which submit that
in 1990, 1991 and 1992, when there were 300 mopeds on the roads,
there were 69, 67, and 77 accidents reported for the respective
years. In 1995, when there were only 200 mopeds on the roads,
there were 70 accidents reported to the police. In comparing

41

this data, plaintiffs insist that although the island experienced a one-third decrease in the number of available mopeds for use on the roads between the first three years of the 1990s and the year 1995, the decrease did not carry over into a similar decrease in accidents stemming from moped operation. Plaintiffs profess that this lack of direct correlation between moped numbers and moped accidents necessarily must give way to a conclusion that the hardship imposed on defendants, if an injunction is issued, is minimal.

With regard to the fourth and final element of the preliminary injunction analysis - the effect on the public interest of a grant or denial of an injunction - it seems unlikely that the rental of ten extra mopeds by a licensee will appreciably compromise the public safety. Moreover, this court has not lost sight of the public interest in ensuring that commerce among the states remain open and free of fettered regulations.

In considering the likelihood of plaintiffs' success on the merits, the potential for irreparable injury, the balance of the relevant equities in this case, and the effect on the public interest, the court is content that a preliminary injunction should be issued in this action to preserve the status quo. Accordingly, until the claims remaining in this case are

42

resolved, plaintiffs shall be allowed to operate their individual moped businesses with forty (40) mopeds.

CONCLUSION

Based on the discussion previously noted in this Order, the Defendants' Motion for Summary Judgment (document no. 20) is granted in part and denied in part. The two causes alleged in plaintiffs' complaint and which are remaining in this action are (1) the claim that the local ordinance is violative of the United States Constitution in that it unreasonably interferes with interstate commerce; and (2) the claim that defendants' action unjustifiably interferes with existing and prospective contractual relations. The balance of plaintiffs' causes of action are dismissed.

In light of the claims remaining in this action and the need to maintain the status quo so as to more effectively remedy recognized wrongs, Plaintiffs' Amended Motion for Preliminary Injunction Pendente Lite (document no. 35) is granted consistent with the dictates noted elsewhere in this Order.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  July 29, 1996

43

cc:  Robert B. Mann, Esq.
     Mark J. Hagopian, Esq.
     Marc DeSisto, Esq.
     Merlyn P. O'Keefe, Esq.
     Amato A. DeLuca, Esq.
     Raymond F. Burghardt, Clerk